No. 183.—D. C. MORGAN, Administrator, *v.* W. Y. KINNARD et al.

23 645
47 532

23 645
117 503

An act of sale of real property under private signature takes effect against third persons only from the date of registry in the proper office and the delivery of the property. If, therefore, real estate has been sold under act by private signature, and the vendor remains in possession, and the act is not recorded, a third purchaser by public act acquires a good and valid title thereto, notwithstanding the former sale under private signature.

A judicial admission or allegation in the defense to the payment of notes given for the price of land, that the defendant has no title, will not enable a third person who gets possession of such land, without title, to hold it under such judicial admissions. The general rule is, however, well established that judicial confessions, when voluntarily made, are conclusive against the parties making them.

APPEAL from the Fourteenth Judicial District Court, parish of Morehouse. *Ray, J. S. G. Parsons,* for plaintiff and appellee. *Newton & Hall* and *Todd & Brigham,* for defendants and appellants.

LUDELING, C. J. This is a petitory action to recover a tract of land described in the petition. The defendants filed a general denial, and they further alleged that J. T. Payne, now dead, purchased the land at public auction as the property of the estate of James W. Kelly, and that the said Payne and those under whom he holds, have been in possession more than ten years under titles translative of property.

The evidence in the record establishes the following facts:

That on the twelfth of July, 1856, Mrs. Dicey Kelly executed an act *sons seign privé* in favor of her son, James W. Kelly, transferring the land in controversy; that the vendor, Dicey Kelly, remained in possession of the property thus transferred until 1861, when she sold the same property to Isaac F. Norrell by notarial act and gave him possession thereof. That James W. Kelly was in the neighborhood at the time of the sale to Norrell; that he knew of the sale—he was frequently on the place after the sale to Norrell, and that up to the time of his death, in 1864 or 1865, he permitted Norrell to remain in the undisturbed possession of the property.

Article 2442 [2417] of the Civil Code declares "the sale of any im-

movable made under private signature shall have effect against the creditors of the parties and against third persons in general, only from the day such sale was registered according to law, and the actual delivery of the thing sold took place." 2 An. 912.

The sale under private signature to J. W. Kelly in 1856 had no effect against Isaac F. Norrell who bought from Dicey W. Kelly in 1861, because she had remained in possession from the date of the private act to the time when she sold to Norrell, and therefore he acquired a good title by his purchase in 1861. This view of the case renders it unnecessary to pass upon the bills of exception relative to the reception of testimony to establish the simulation between Dicey Kelly and J. W. Kelly.

It appears from the record that W. Y. Kinnard was appointed administrator of the estate of J. W. Kelly in 1867; that as administrator he sold the property in dispute at public auction, first to Robb & Payne, and afterwards to James T. Payne. The evidence creates at least a strong suspicion that these sales were collusively made between the administrator and Payne. The administrator swears as follows:

"I sold it to Payne in 1869. I made a sale of the place once before. I cried it off under an order and advertisement, but the terms of the sale were not complied with, and I readvertised and sold it again. I don't know whether there was any title given in the first sale or not. I think Mr. Payne paid between $400 and $500 for the land. * * * Ever since I commenced the administration of the estate I have been cultivating the land, except about forty or fifty acres of bottom land and one hundred acres hill lands. In the sale of the land from me as administrator to Payne, it was understood that I was to be a party interested in the purchase. I was to be one-half owner of it. I borrowed my part of the price from Mr. Payne; paid for the land."

The witness stated on re-examination in chief that his wife was a sister of J. W. Kelly, and that "it was understood that I should use my wife's interest in paying her proportion as far as it would go, she being an heir of J. W. Kelly." This witness swears further that the land in controversy had been transferred to him after the act sons seign privé to J. W. Kelly by Dicey Kelly, and that he retransferred the land in order that Mrs. Kelly might sell it to Norrell. He knew all the facts relative to the simulated and null act of Dicey Kelly to J. W. Kelly, and yet he devised schemes to try to sell the property as that of James W. Kelly, deceased. The evidence in this record fully satisfies us that James T. Payne also knew all the facts in relation to the title of James W. Kelly and Isaac F. Norrell.

The former administrator of I. F. Norrell's estate shows directly that Payne did know all about it, and other evidence corroborates his testimony.

But, be this as it may, the notarial act of sale to Norrell was recorded; the property had been in his possession from February, 1861, to some time in 1866, when he died. The property was inventoried as his after his death, and went into the possession of his administrator, who retained possession until the administrator of J. W. Kelly illegally took possession of it. The sale by Kinnard, administrator, to Payne was the sale of the property of another, and therefore null and void. C. C. 2452.

It is contended that Norrell is estopped from setting up title to this land, because when sued on one of the notes given for the price thereof he alleged that the consideration of the note had failed, inasmuch as he had not received a perfect title; that the land had been previously transferred to J. W. Kelly.

The same witnesses who prove the above facts state that Norrell, during the pendency of the suit, proposed to compromise the note in suit by paying $2000. It is a general rule that parties are bound by their judicial admissions, and it is also true that admissions made in one suit may sometimes be used in another suit, even though the parties to the suit be not the same. But we are not prepared to say that all admissions made in pleading may be used as an estoppel in every suit in which the party making them may be a party.

This suit is itself an example of the harshness and injustice of the rule contended for. Suppose that judgment had been rendered against Norrell on the note, in spite of his defense, he would have the price to pay, and yet any stranger who might get possession of his land could hold it without a legal title, because Norrell had admitted in the contest for the price that he had no title. Doctrines which lead to such unjust conclusions can not be correct.

The evidence in the record shows that a considerable portion of the lands in controversy are cleared, and that they have been cultivated by the defendants; but the evidence does not fix the quantity of lands cleared or cultivable, so as to enable the court to fix the amount of rents.

It is therefore ordered and adjudged that the judgment of the district court be affirmed, with costs of appeal.