## No. 11,137.

### JACOB IMHOF VS. AMELIA IMHOF, HIS WIFE.

1. There is a difference between "estoppels" which preclude the advancing of a claim at all, and "admissions by conduct," or "presumptions arising from conduct," which only render difficult of proof, pretensions inconsistent therewith.

2. Estoppels may be waived or renounced by permitting evidence covering the whole ground to be received without objection.

3. If a husband actually hold and possess as owner property at the date of the second marriage, the fact that he may hold it unduly does not preclude him as between himself and his second wife from claiming it as his own.   The origin and source of the property does not concern her; it is enough that it does not belong to her and the second community.

4. If a plaintiff have documents in his possession legally admissible *per se* in behalf of the defendant, it is no good ground for not producing them that by reason of his incompetency as a witness he may not be able to give his own testimony or explanation of them.

5. A defendant who during the progress of the trial calls for books or papers in possession of the plaintiff must conform to the requirements of Art. 130 of the Code of Practice.

6. A writ of *fieri facias* having issued to enforce the payment of alimony for one month, under an order of the District Court that plaintiff should pay defendant forty-five dollars per month, a rule was taken by plaintiff on defendant to show cause why the same should not be set aside. After hearing had the rule was made absolute and the writ set aside. The defendant appealed. *Held*, that the matter in dispute was below the appellate jurisdiction of the Supreme Court.

APPEAL from the Civil District Court for the Parish of Orleans. *Rightor, J.*

*Chas. F. Buck* and *Dinkelspiel & Hart* for Plaintiff and Appellee.

*

*Sambola & Ducros* for Defendant and Appellant:

1. A party to a judicial record is precluded from disproving a thing's value attested or acquiesced in by him. 33 An. 352; 40 An. 189, 763.
2. This value is shown by evidence *aliunde* not to be incorrect in fact.    *
3. The trial judge erred in not allowing appellant $500 as a claim of hers against the parties' community.
4. The rent of community property accrued between the date of a suit for separation from bed and board and the day of the sale thereof, made to effect a partition, is a necessary asset of the community. R. C. C. 150, 155, 2432; 2 Duranton, No. 622.
5. So-called debts of the community, not legally proved, should be disallowed on appeal, though the lower court has not passed upon them. 8 N. S. 63; 11 An. 404; 13 An. 448; 24 An. 223; R. C. C. 2248; 15 An. 457; 19 An. 326.
6. A debt contracted by the husband, since the date of the judgment of separation, is legally presumed to be his own personal obligation. R. C. C. 150, 155 2432; 2 Duranton, No. 622.
7. A wife separated from bed and board may, in proceedings tending to a settlement of the community, call for her husband's books, papers and documents relative to his business. 16 L. 28; 34 An. 375, 1176; 1 Marcade, p. 603; 2 Toullier No. 759.
8. The destitute wife, suffered to starve by her husband, may legally sell community movables, to obtain the necessaries of life for herself and child, be she plaintiff or defendant, and should be allowed to retain the proceeds thereof on account of that alimony to which she was entitled *pendente lite*, whether the final judgment be rendered for or against her. 10 Toullier, No. 95; 13 Duranton No. 454; 5 Larombiere, p. 212; R. C. C. 147, 148; 14 An. 731; 2 Duranton, Nos. 595, 596, 597; 3 Zachariæ, p. 369; 19 L. 581; 15 An. 593.
9. A provision for alimony inserted in a final judgment of separation is strictly legal, and constitutes *res judicata* between the parties thereto, be the alimony decreed without or with their consent. 6 An. 196; 20 An. 277; 30 An. 522; 2 Duranton, Nos. 617, 633; 1 Marcade, p. 611; Pothier, Marriage, No. 522.

The opinion of the court was delivered by

NICHOLLS, C. J.    The plaintiff in May, 1891, instituted, for reasons assigned, against his wife, to whom he was married on the 16th November, 1876, a suit for a separation from bed and board, and a dissolution of the community.

He alleged there were no children issue of their marriage. That he had in his possession and under his control some property, to-wit: his business and appurtenances thereto belonging, which the law would hold as community property—that he had not been prosperous, that in fact he was seriously embarrassed, and said community is insolvent and unable to refund to him a sum of $10,000,

separate property, which he owned and possessed at the date of his marriage, but which he desired to have recognized as against his said wife. That he was residing with her at No. 550 Canal street, which, however, he uses also as part of his business, as a retail and whole- sale grocery, keeping therein his wagon, horses and other appur- tenances necessary in the business, and he can not remove them without great injury to his business and inconvenience in the man- agement thereof. That it is necessary for him, pending the suit, to live apart and separate from his wife. That his wife is unwilling to accept a residence which he is ready to tender her and that an order of court is necessary in this regard, and for the purpose of furnishing her with a separate domicil and residence, and mainten- ance, he is ready and willing to pay an adequate alimony per month in proportion to his means, say, besides the dwelling, the sum of $35 a month, on condition that such separate domicil be assigned her and she occupy same.

He prayed for citation, for judgment decreeing a separation from bed and board, and dissolving the community and recognizing his claim against the community property for the sum of $10,000. He further prayed that his wife be ruled to show cause why she should not be ordered to leave the matrimonial domicil and have a domicil as- signed her upon petitioner's paying rent therefor and the sum of $35 per month or such other amount as the court might fix according to the circumstances of the parties, after hearing. This application was granted on the 19th June, and the wife ruled into court accordingly.

The defendant answered June 5, 1891. She pleaded the general issue, charged plaintiff's petition to be a tissue of falsehoods and slanders, averred herself to have always been a dutiful and exem- plary wife, and prayed that plaintiff's demand be rejected. Assuming then the position of plaintiff in reconvention she attacked her hus- band's conduct vigorously, and alleging that she and her husband are owners in common of some movable and immovable property in the city of New Orleans; that one of the properties was occupied by them as the matrimonial domicil, where she is entitled to reside; that she had inherited from her parents since their marriage $600, which her husband had used in his business, and that she feared her husband would dispose of the community property under his control to defraud her; that, in fact, he had already burdened it and other- wise entangled the real estate with simulated mortgages to her

detriment, and that it was necessary for the preservation of her rights that an inventory and appraisement be made of the movables and immovables in his possession; that an injunction should issue, restraining him from disposing of any part thereof in any manner to her prejudice; she prayed for the taking of such inventory; for an injunction restraining her husband and prohibiting him from disposing of any of the property, except in the transactions of the commercial business in which he is engaged; that she have judgment decreeing a separation from bed and board, and condemning her husband to pay her the sum of $75 per month from the 1st of June, 1891, as alimony.

The court ordered an inventory to be taken, and that an injunction issue as prayed for.

By a minute entry of June 26 it appears the incidental rule to show cause of June the 19th was taken up on that day, both parties being represented, and that after hearing, pleadings, evidence and arguments the matter was taken under advisement. A minute entry of the 29th June appears, to the effect that " the law and the evidence being considered, it is ordered that plaintiff's rule be made absolute, and that plaintiff be ordered to pay to defendant, his wife, the sum of $35 per month alimony, to commence from the date she shall remove to the domicil hereafter assigned her. Further ordered that defendant be ordered from the house now occupied by her, being the matrimonial domicil, No. 550 Canal street, to such place to be hereafter definitely fixed, established and approved by the court—the plaintfff to pay rent therefor and expenses of removal, and that said judgment for alimony shall commence from the date of said removal."

Defendant moved for a new trial on the ground that the evidence adduced did not justify the ejectment of defendant from the common dwelling to another domicil " to be hereafter definitely fixed, established and approved by the court," and the court erred in giving such an order, inasmuch as mover never declared her intention to leave the said common dwelling under Art. 147, C. C.; that the execution of the order will endanger the life of defendant, who is lying in bed in a most critical condition. That she is entitled to $75 per month as alimony under the evidence and that the small sum allowed her, " to commence from the day on which she shall remove to the domicil to be hereafter assigned her," will not avail her, as she is at the present time in necessitous circumstances, in

immediate need and depending upon the charity of her neighbors, although her husband has $20,000 worth of property belonging to the community; that it was shown that her husband has never provided for her since the institution of this suit and since he abandoned the matrimonial domicil.

On the 11th March, 1892, the case went to trial, and in the note of evidence an entry appears to the following effect: "It is agreed in regard to alimony (the condition of the original judgment never having been fulfilled), that judgment be rendered condemning plaintiff to pay alimony from the first day of January, 1892, at the rate of $45 per month until the settlement of the community, on condition that she vacates the house."

The judgment rendered by the court was in favor of plaintiff and against defendant. It decreed a separation of bed and board and a dissolution of the community, ordered the matter of the settlement of the community to remain open for future adjustment, referred the parties to Marcel T. Ducros, notary, for the purpose of settling the community and the adjustment of their opposing claims, and further ordered and decreed that the sum of $45 per month be paid by the plaintiff to the defendant as alimony from the first day of January, 1892, and that the cost of the proceedings be paid by the community. The parties to the suit were not personally present at the trial, but were represented by their respective attorneys.

On the 6th day of April, 1892, the parties and their attorneys appeared before Marcel T. Ducros, notary, for the purpose of settling the community and adjusting their opposing claims, as directed in the judgment of the 11th March, 1892. The notary submitted to them an extract from the inventory which he had made at the inception of the proceedings under the order of the court. The parties then presented their respective claims and objections, of which the notary, as required by Art. 1368 of the Civil Code, made a *proces verbal*, suspended the proceedings and referred the whole matter to the district judge for his decision thereon.

On the filing of the notary's *proces verbal* in the District Court plaintiff's counsel, suggesting to the court that the parties had been unable to agree before the notary, and that the claims of plaintiff were well founded and those of the defendant not well founded, and that the act of partition should be completed as contended for by him, obtained an order ruling the defendant to show cause why the act of partition should not be so completed.

On the trial of this rule the court rendered a judgment, but on motion of defendant it was set aside and a new trial granted. On the second trial the court made plaintiff's rule absolute in the following respects:

"Where not objected to or opposed by either party it is to be approved as correct—that accordingly the contents of the store or the business carried on by the plaintiff, with outstanding assets and liabilities, be decreed to be part of the community. That all real estate acquired in the name of the plaintiff as described in the inventory on file and embodied in the *proces verbal* be decreed to be community property. That the real estate acquired by Jacob Imhof on the 12th of July, 1875, fronting on Rampart street, in the square bounded by Julia, Rampart, Delord and Dryades streets, be decreed to be the separate property of Jacob Imhof. That Jacob Imhof be decreed to be a debtor of the community in the sum of $1500, part of the purchase price of said property paid after his marriage with the defendant. It is further ordered that Jacob Imhof do have judgment against the community and recognized as creditor thereof, to be paid out of the assets for the payment of all his debts as against his wife in the sum of $8000, being the amount owned and possessed as his separate property at the date of his marriage with the defendant. That the defendant be decreed to be owner of the piano claimed by her as her separate property, and that she have and recover judgment against the plaintiff, Jacob Imhof, or against the community, for the sum of $150, her separate property, entrusted to him and by him used for the benefit of the community. That her claim for $500 be rejected, and it appearing that she has been in possession of the household furniture belonging to the community, and which was stored in the matrimonial domicil, and that she has kept some or disposed of it for her own benefit, that she be made to restore the same or account for the value thereof in the final partition. It is further ordered that the notary proceed with the act of partition of the community property between the parties on the basis of this judgment, and that all costs be paid by the mass."

From this judgment the defendant has appealed.

It will be remembered that on the judgment rendered on the 11th of March, 1892, the court ordered and decreed that the sum of $45 per month be paid by the plaintiff to the defendant as alimony, from the first day of January, 1892.

The plaintiff appears to have paid this amount monthly up to the 31st of May, 1892, but failing to do for the month of June, defendant through her counsel suggesting that fact to the district judge obtained an order from the judge that a *fi. fa.* issue to secure the payment of that amount.    The writ which issued thereunder was satisfied through a  seizure.    The plaintiff having refused to pay the $45 which fell due on the 31st of July, 1892, again applied for and  obtained a  writ of *fi. fa.* to force payment.   Plaintiff's counsel thereupon moved that the defendant show cause why the order authorizing the issuing of a writ of *fi. fa.* to collect alimony should not be rescinded and all proceedings under  the  writ issued thereunder should not be stayed and quashed for the following reasons:

1. That the judgment of separation from bed and board rendered between the  parties is final and  the  wife  is entitled to no further alimony.

2. Even if  this were not so she is not entitled to alimony without proof that she has maintained a  residence at a domicil assigned by the judge.

3. She is not entitled to alimony pending the proceedings for settlement of the community which she obstructs and delays.

On the 15th of September, 1892, the judge rendered a judgment in the matter of this rule in which he used this language:

"I have looked in vain in the record for a valid  judgment to sustain  the  writ  of  execution issued herein to collect alimony for any time after the rendition of the judgment.   It is true in  the  note of evidence there is a sort of statement that to a certain extent, as far as the property affairs of  the parties are concerned, the judgment is based upon consent, and said note of  evidence shows that the judgment was intended to be that the husband pay alimony until the settlement of the community, but I find no warrant in law for any such judgment based  upon consent between the husband and wife, or for its enforcement, even it had been  agreed to.    I must therefore look to the scope of  the  judgment  itself, and the only question that embarrasses me is whether or not, the judgment being subject to appeal, alimony  may  be  recovered  by  the  wife  in any event pending the appeal or pending the delays allowed for  prosecuting such appeal. The wife is the defendant in  this  case and it is  a  serious  question, and in fact has been adversely decided by the District Court that the wife being defendant can  not recover alimony at all.    But waiving

this point I am of the opinion that the parties having proceeded actively to settle the community of acquets and gains have thereby acquiesced in the judgment and no appeal will lie from it—it has become final by acquiescence, and being final all incidental or interlocutory proceedings except such as might arise out of the case of children are at an end. The separation of the husband and wife is complete, subject only to the probation of the law founded upon public policy, that neither shall be permitted to contract marriage until a full divorce shall have been granted. It is therefore ordered, adjudged and decreed that the rule taken in this case on the 24th of August last to set aside the order authorizîng the issuance of the *fi. fa.* to collect alimony be made absolute and the *fi. fa.* quashed."

From this judgment the defendant has appealed separately.

The first portion of the main judgment appealed from which defendant attacks is that recognizing the community to be indebted to the plaintiff in the sum of $8000.

On this subject she claims that the detailed inventory of the first community and of the succession of his first wife taken only fourteen days prior to the date of the second marriage, as well as his account of tutorship approved under the signature of the minor's undertutor and homologated by the court on the 13th of January, 1877, prove that the stock was then worth only $534, and that the appellee had no cash on hand and no outstanding bills against any of his customers, and appellee is estopped from impugning the verity of the facts of those judicial proceedings.

There is no doubt that the mortuaria proceedings taken in the matter of the succession of the first wife of the plaintiff are evidence tending to discredit and strongly discredit his present assertion that at the date of his second marriage he had property to the amount of $10,000, but there is a great difference between " estoppels " which preclude the advancing of a claim at all, and admission by conduct or presumptions arising from conduct which only render difficult of proof pretensions which are set up inconsistent therewith.

The defendant in this suit was not a party to the proceedings which she invokes, and her rights and her course here in no manner controlled, injured or affected them so far as the record shows. The mortuaria were admissible in evidence, but when so received they worked no " estoppel." Estoppel was not pleaded, and evidence covering the whole ground was introduced without objection.

Estoppel resulting from the most solemn adjudications of courts may as such be waived or renounced, unless insisted upon when evidence adverse to them is sought to be introduced.

We are of the opinion from the evidence that the inventory and account in the succession of plaintiff's first wife did not truly show the rights of parties at that time as between plaintiff and his children by first marriage, and the latter were not properly dealt with, but that fact by no means leads up to the result which defendant contends for. It in no wise follows that, because the plaintiff may have retained out of the property of the first community a large amount belonging to his children, the amount so retained fell into the second community. If in point of fact plaintiff had in his possession and holding as owner $10,000 at the time of his second marriage, the origin or source whence it was derived does not legally concern the defendant. It is enough for her to know it does not belong to her. He may have held it unduly, but that was a matter between himself and the person from whom it was withheld, and not between him and his second wife. His wrong doing, if such there was, did not, in law, enure to her benefit.

The witnesses vary greatly in their estimates as to plaintiff's actual pecuniary condition at the date of the second marriage. We think it established beyond doubt that he was very well off at that time. The district judge reached the conclusion that he then owned property to the amount of $8000, exclusive of the real estate on Rampart street. We think he fixed the amount too high and that the judgment as to that item should be reduced to the sum of $5000. If the plaintiff in reality owned more than this, he must suffer the penalty of having left uncertain, that which should have been precisely fixed and ascertained, when it was not only easy, but when it was his duty to have done so. After the plaintiff had closed, (the trial being in progress, and defendant taking testimony in her own behalf) her counsel called for the production of plaintiff's bank book from 1877 to that time, stating his object to be to prove the amount of money deposited by plaintiff during the community and what was his financial standing at the time the inventory was taken. Plaintiff objected to this demand on the ground that the books called for are equivalent to testimony of plaintiff, which can not be admitted in the case. The court sustained the objection, ruling " that the books of plaintiff are nothing without explanations, and plain-

Imhof vs. Imhof.

tiff can not be permitted to testify in regard to them." In this connection it may be well to say that whilst proving up his own case plaintiff had offered himself as a witness on his own behalf, but on objection made by defendant he was not permitted to testify. We do not think the particular reason assigned by the court tenable. If a plaintiff have documents in his possession legally admissible *per se* in evidence on behalf of the defendant, the fact that should he produce them he may not be able to give his own testimony in explanation of them would not justify their exclusion. (Williams vs. Goss, 43 An. 870.) In the case at bar the identical information which defendant sought to elicit through plaintiff's bank book could have been procured directly through the testimony of the bank officers, and the fact that plaintiff might not be able to testify relative to the entries, would not be good ground for keeping the testimony out. The situation is not changed in this special particular by the defendant having recourse to her husband's bank book for the information instead of to the bank; but we do not find reversible error in what happened. Instead of seeking the testimony of the bank officials, as she could have done, she thought proper to depend upon a call on her husband during the progress of the trial, and did so without laying the foundation required by law and without following out its requirements. C. P. 140.

Defendant complains that judgment was not rendered in her favor against her husband for $500 over and above the $150 recognized by the court as having been received by her by inheritance and turned over to her husband. We think it clearly established that the only money received by her from that source was the $150 for which she has recovered judgment. The simple fact that pending the community $500 were deposited in her name in a bank, which she drew out and delivered to her husband, would not justify a judgment in her favor against her husband as for so much money belonging to her separate estate which he had received and converted to his own use. Without any explanation of the origin or source of the money it is presumed, in spite of the deposit in the name of the wife, that the funds belonged to the community.

A large part of the defendant's brief is devoted to a discussion of the claims which the plaintiff presented as claims of the community. The persons who are stated to be creditors are not before the court, and we are not in a position to pass upon their claims even if their verity were a proper subject of inquiry in this proceeding.

Both parties are represented by counsel and we assume they will avail themselves of all the rights and remedies to which their respective clients will be entitled. The defendant will have the undoubted right to protect herself as against any attempt which her husband might make to get possession of, and fraudulently hold, the community funds under the pretext of paying claims which are merely nominal and purely fictitious, should she have good grounds for believing he intended doing so, and to see to it that she will be paid exactly what is due to her. The circumstances under which she could act and the method of action we do not here discuss.

Defendant claims that plaintiff since the institution of this suit has received a large amount from rents of community property and he should be held to account for them. In this she is right, but on the other hand the plaintiff will be entitled to any legal claim he may have for taxes, necessary repairs, etc., paid by him for and on account of these properties. Both parties are at liberty to set up claims they may have for matters arising since the institution of this suit.

The defendant has by a separate order of appeal appealed from the order or judgment of the District Court setting aside the *fi. fa.* for $45 for alimony for the month of July, 1892.

No view which we can take of that order would justify our entertaining an appeal from it. (See Malony vs. Malony, 9 R. N. 116; Fletcher vs. Henler, 13 An. 150.) Whether we look at the direct and immediate issue raised and determined by the decree, which at that time only regarded a sum of $45, or whether we consider it from the standpoint of practically determining that the defendant was and would be entitled to no further alimony, in neither case could we find " the matter in dispute " to be one within our constitutional jurisdiction as to amount. The evidence in the record establishes that (rightly or wrongly) alimony had been paid from January 1, 1892, to June 30, 1892, and the only question at the time before the court was in reference to alimony for one month, that of July.

It may be that the result of the view of the situation taken by the district judge will be to deprive defendant for months to come of what she evidently claims to be her right to alimony by express agreement until the affairs of the community are finally liquidated and closed, but we do not know nor is defendant able to say how short or how long that period will be. We can not assume that mat-

ters could be so long prolonged as to bring a determination of the question within our appellate jurisdiction.

There are additional reasons for not reviewing the action of the district judge.

In plaintiff's original petition he offered to pay defendant $35 a month on certain conditions, designating the money so to be paid as "alimony."

In defendant's reconventional demand she claimed $75 a month, referring to it as "alimony." And on both occasions where the district judge dealt with the matter he also did so as "*alimony*."

A claim for "alimony" is not only an incident of the suit for a separation from bed and board, but any order rendered on that subject is an interlocutory collateral order which in the very nature of things is indeterminate both as to duration and as to amount, changing with varying circumstances and shifting with different conditions. It is an order under the control of the judge, and subject to a very great extent, if not entirely, to his discretion. The fact that the last order in this case touching that subject was inserted in the final judgment was purely accidental and did not change the character of the order from that which it would have had if rendered in a different manner. It was still an interlocutory order subject to modification or revocation by the judge. Elder vs. Rogers, 11 An. 606; Hennen's Digest, p. 330, No. 3.

For the reasons herein assigned, it is hereby ordered, adjudged and decreed that the judgment appealed from be amended so as to reduce the amount for which judgment was rendered in favor of the plaintiff against the community from the sum of $8000 to the sum of $5000, and as so amended it is affirmed, and the case is remanded for further proceedings in accordance with the views expressed in this opinion. Appellees to pay costs of appeal.