(37 South. 478.)

No. 15,089.

BROWN, CHIPLEY & CO. v. HAIGH et al.*

(June 24, 1904.)

SHIPPING—CHARTER PARTY—ESTOPPEL.

1. The party appearing in a charter party as owner of the vessel chartered was in reality only an agent of the owners, acting as between himself and the owners under limited powers, and under a special agreement as to compensation.

This agent employed subagents, with whom the owners had no dealings. The rights of the latter as to commissions are controlled by the terms of the actual contract which their principal had made with the owners.

2. Though certain allegations made in a suit brought by A. against B. to which suit C. is no party, may be utilized by C. in a suit between himself and A., as containing admissions

in his favor, they cannot be urged by him as working an estoppel against A. Between them they are open to explanation and correction.

(Syllabus by the Court.)

Appeal from Twenty-Eighth Judicial District Court, Parish of Jefferson; Jerome Louis Gaudet, Judge.

Action by Brown, Chipley & Co. against Henry Haigh and others. Judgment for defendants, and plaintiff appeals. Affirmed.

Rouse & Grant, for appellant. Merrick & Lewis, Philip Gensler, Jr., and Adams & Middleton, for appellees.

Statement of the Case.

NICHOLLS, J. The plaintiff, averring itself to be a corporation organized under the laws of the state of Florida, and doing business therein at Pensacola, alleged: That the defendants were indebted to it in the sum of $10,376.50. That it had been, and was still, engaged in business as ship and steamship agent and broker. That on and before the 6th of October, 1900, the defendants were owners of the British steamship Coralie, which they desired to let or hire, and, petitioners being advised by David G. Pinckney & Co., of London, England, who were the agents of said defendants in the premises, that they were desirous of effecting a charter of said steamship Coralie, petitioners did procure and effect a charter of said steamship to Messrs. Georg & Co., of Mobile, Ala., by means of a charter party. That, as would be seen by reference to said charter party, defendants thereby agreed to let and the said Georg & Co. agreed to hire said steamship from the time of delivery for the term of 36 calendar months, the charterers having the option, however, of canceling the charter party at the end of 24 months by paying the owners £1,000.

That, as appeared by said charter party, it was made upon conditions numbered from 1 to 28, the twenty-sixth condition being as follows:

"26. A commission of five per cent. upon the gross amount of this charter and the usual freight brokerage, payable by the steamship and owners was due to Brown, Chipley & Co., upon the signing hereof, charter canceled or not canceled, steamship lost or not lost, and also upon any continuation or extension of this charter, or on sale of vessel."

And the fourth condition being that charterers should pay for "hire of said steamship eleven hundred and seventy five (£1,175) pounds British sterling in advance for each calendar month for the first twelve months and eleven hundred and fifty (£1,150) pounds British sterling in advance for each calendar month for the remaining twenty-four months of the charter party."

That petitioner also incurred and paid cable expenses in effecting said charter amounting to $100, and other expenses at Mobile, Ala., in the negotiation of said charter party, amounting to $50, and also paid the sum of $20 internal revenue tax for the stamp as required by law upon said charter party. That petitioner was informed and believed and therefore averred that said steamship, in execution of said charter party, sailed from Aarhus January 17, 1901, and on or about February 12, 1901, arrived at Mobile, Ala., and was then and there tendered to said charterers in compliance with their contract aforesaid, but said charterers, Georg & Co., refused to receive and accept the same, but their refusal in no wise affected the right of petitioner to its commissions, brokerage, expenses, etc., which became due upon the signing of said charter party.

That by reason of the premises petitioner became entitled to be paid by defendants the commissions and brokerage stipulated as above stated amounting to the sum of $10,-216.50, cable expenses in effecting said charter party amounting to $100, cost of stamp upon charter party, $10, and expenses incurred at Mobile, $50; total, $10,376.50—all of which remained due and unpaid, payment thereof having been demanded and refused.

That said defendants, and every one of them, resided out of the state of Louisiana, and upon information and belief it averred that they had some property within the jurisdiction of this court, and that a writ of attachment and the seizure of such property were necessary for the protection of petitioner.

In view of the premises it prayed that the defendants in solido pay petitioner the sum of $10,376.50, with interest from judicial demand, and all costs of suit; that a writ of attachment be issued commanding the civil sheriff to seize the property of said defendants within this parish, or sufficient of said property to realize by the sale thereof the amount due petitioner, and that it be decreed to have a lien and privilege thereon, and be paid out of the proceeds thereof by preference over all others; that a curator ad hoc be appointed to represent the defendants, and that citation be served upon him.

The court ordered a writ of attachment to be issued as prayed for on a bond for $10,400, and appointed Frederick A. Middleton curator ad hoc to represent the defendants. The writ of attachment was executed by the sheriff, the steamship being seized and taken into his possession. The ship was released on bond.

Defendants excepted that plaintiff's petition was not addressed according to law, that plaintiff had no right or title to stand in judgment, that plaintiff's suit had not been brought by a proper officer, that it was not a corporation, and that plaintiff's petition disclosed no cause of action.

The exceptions were overruled.

Defendants answered, pleading, first, the general issue. They then averred that they had no dealings with the plaintiff in this case, and that there was no privity of contract existing between the plaintiff in this case and these defendants; and the defendants specially denied that they ever authorized such a charter party as the one sued

on in this case. They admitted that they made arrangements with Messrs. David G. Pinckney & Co., of London, to charter the steamship Coralie, said arrangements having been made between the firm of McIntyre Bros. & Co., acting for and in behalf of defendants, and David G. Pinckney & Co.; and that the terms of a time charter were finally concluded at Hull, England, between defendants or their agents, Cammell, Haigh & Co., and Messrs. David G. Pinckney & Co., represented by Mrs. Marmaduke Lawther, acting for Messrs. David G. Pinckney & Co.

They averred: That it was understood on Saturday, October 6, 1900, that, if any charter signed by David G. Pinckney & Co. of the Coralie, whether the charter read 5 per cent. commission or not, the commission and brokerage received by said David G. Pinckney & Co. and their subagents was to be 2½ per cent. on the gross amount of freight only, to be paid when and as earned under this charter, and without freight brokerage; and that said commission should be only payable as earned; and that a commission on the sale of the vessel should only be due them in the event of her being sold to the charterers, say Messrs. Georg & Co., of Mobile. That this agreement was confirmed on or about October 8, 1900, by a letter written to Cammell, Haigh & Co., of Hull, by Messrs. David G. Pinckney & Co.—Cammell, Haigh & Co., being also agents and representatives of defendants—as well as by letters of October 26 and October 29, 1900, written to the firm of MacIntyre Bros., representing these defendants, by David G. Pinckney & Co. That they were informed by Messrs. David G. Pinckney & Co., of London, and believed the information to be true, that, notwithstanding the charter party sued on in this case contained the printed clause that 5 per cent. was due to plaintiffs, that, nevertheless, as a matter of fact, only 2½ per cent. would have been due for division between the plaintiffs and David G. Pinckney & Co.

and their subagents had the charter been carried out, and such commission would only have become due as the hire was earned—and defendants charged that this basis of commission was agreed upon by plaintiffs and David G. Pinckney & Co. by letters written to Brown, Chipley & Co. on or about November 3, December 6, December 19, December 29, 1899, and January 15, 1900, by David G. Pinckney & Co., and by a reply to said letters written by plaintiffs dated December 29, 1899, January 16, 1900, and by other correspondence; and that, had said alleged contract been carried out and the time earned, plaintiffs would have got only one-half of 2½ per cent.

Defendants, further answering, specially denied any liability for cable expenses or any other office liabilities of plaintiff. Defendants were informed and believed that the Coralie did sail from Aarhus on January 17th, and was tendered to Georg & Co. on February 12th, but defendants denied that Georg & Co. were a solvent and responsible charterer, and denied that Brown, Chipley & Co. were acting in good faith Assuming the position of plaintiffs in reconvention, defendants showed that the attachment issued in this case was illegal and fraudulent, causing defendants great annoyance and embarrassment, delays in getting out their ship, loss of time, expenses in the sum of, say, $2,000, and attorney's fees in the sum of $1,037.65, caused by said illegal and unwarrantable attachment of said Coralie, and costs; for all of which injury the plaintiff was responsible.

In view of the premises defendants prayed that there be judgment in their favor and against the plaintiff's original demand and attachments, and that they have and recover judgment in reconvention against Brown, Chipley & Co. for $3,037.65, and for costs, and such further and general relief as law, equity, and the nature of the case might require.

Defendants filed amended answers, in which they reiterated their allegations that there was no privity of contract between the plaintiff and themselves. They averred that clause No. 26, as written in the charter, was not binding upon them, and was placed in the charter without their authority, and without their knowledge; that they understood the said clause as so written had been modified by the agreement with David G. Pinckney & Co. they and their subagents were altogether to receive a commission of 2½ per cent. on the gross amount of freight only, to be paid when and as earned.

The district judge rendered judgment against the plaintiff on the main demand and against the defendants on the reconventional demand.

The plaintiff and the defendants each appealed.

## Opinion.

The charter party referred to in the pleadings purports on its face to have been entered into between David G. Pinckney & Co., agent and owners of the steamship Coralie, "appearing through Brown, Chipley & Co., by cable authority from David G. Pinckney & Co., and S. Georg & Co. The names of the defendants in this case do not appear in the instrument at all.

The twenty-sixth clause of the charter party declares that a commission of 5 per cent. upon the gross amount of this charter and the usual freight brokerage payable by the steamer and owners is due to Brown, Chipley & Co., signing hereof, charter canceled or not canceled, steamship lost or not lost, and also upon any continuation of this charter or on sale of vessel; and address commission of 2½ per cent., payable to Messrs. Georg & Co.

The evidence shows that the real owners and charterers of the vessel were the defendants in this suit, David G. Pinckney & Co. acting as their agents in the premises under special instructions. It also shows that the defendants had no dealings with the plaintiffs. The latter were simply subagents of Pinckney & Co.; were repeatedly referred to as "friends" of theirs. It is established, we think, beyond dispute, that Pinckney & Co. had no authority whatever to enter into the charter party on the terms just recited, and that Pinckney & Co.'s only authority in the premises was that set out in the defendant's answer.

Plaintiff's rights, such as they were, were subordinate to and under those of Pinckney & Co. It could not be asserted for a moment that, were Pinckney & Co. the plaintiffs in this suit, they could recover. If they could not do so, neither can the actual plaintiff do so.

The twenty-sixth clause recites that a certain commission is due to Brown, Chipley & Co., but that clause was inserted for the convenience and benefit of Pinckney & Co. in collecting the money which would be due to them under the charter. It was a mere delegation of agency to them for certain purposes, and the insertion of their name in the charter party did not throw them into privity with the owners of the ship, or alter the latter's legal obligations of the owners to the plaintiff resulting from the charter party.

What may be the relations between the owners of the ship and Georg & Co. springing out of the contract has no relevancy in the present litigation.

Counsel of plaintiff disclose in their brief that, the ship having been refused by the charterers, a libel was filed against them by the present defendants at Mobile for the recovery of damages for their breach of contract, and that in the third clause of the libel the twenty-sixth clause of the charter party is recited at length; and it is averred, among other things, that the said Brown, Chipley & Co. had no contract with

the libelants, or with said David G. Pinckney & Co., for the rendition of further services in connection with the performance of said charter party, nor for any compensation other than that stipulated, payable as stipulated by said charter party upon the signing thereof; and they maintain that this statement is a judicial admission that Brown, Chipley & Co. negotiated the contract which was concluded (the signing of the charter party by Georg & Co.); that it is also an affirmance of their right to the recovery of commissions, and is also an affirmance of that clause of the charter party which provided that the commissions should be due upon the signing thereof.

The statements so referred to must be read in connection with the suit in which they were used, the parties to that suit and the issues therein raised. The present plaintiffs were not parties to that suit, and cannot avail themselves of any statement made therein by way of estoppel. Lachman & Jacobi v. Block & Bro., 47 La. Ann. 505, 17 South. 153, 28 L. R. A. 255.

Conceding that the plaintiffs could avail themselves of them at all, they were certainly open to explanation and correction, and the mass of correspondence between the parties concerned in the present litigation which we find in the transcript withdraws from the statements relied upon all force or strength as against the defendants. We do not think it necessary to copy or refer particularly to this correspondence. It suffices to say what we have said: that plaintiffs' rights in the premises cannot possibly go beyond those of Pinckney & Co., and, when so measured, plaintiffs' demand necessarily falls. Plaintiffs' suit is in reality their suit for the use and benefit of Pinckney & Co., in which they would have a resulting interest by way of participation should Pinckney & Co. recover.

We think the judgment appealed from is correct, and it is hereby affirmed.