LeSUEUR, Judge.
This matter is before us on an appeal taken by the defendant, Joseph C. Cani-zaro, from a judgment rendered against him in the amount of $40,000.00, plus interest, attorneys’ fees and costs, in favor of Frank J. D’Amico, the plaintiff.
On August 9, 1966, Joseph C. Canizaro contacted Frank J. D’Amico about making a loan to G. Brian Corporation (“GBC”), Sam J. Recile and Frank Spalitta. As a result of that meeting, D’Amico drew a counter check for $35,000.00, dated August 9, 1966, to the order of G. Brian Corporation and received a promissory note, also dated August 9, 1966, in the amount of $40,000.00, executed by G. Brian Corporation, through Sam J. Recile as Chairman of the Board. This note was secured by the pledge of GBC stock in the form of Certificate No. 5 for 1.2 shares owned by Frank Spalitta and Certificate No. 6 for 8.8 shares owned by Sam J. Recile, the two certificates representing 100% of GBC stock outstanding and was accompanied by “Assignment Separate from Certificate” forms. The note was thereafter endorsed by Sam J. Recile, Frank Spalitta and Joseph C. Canizaro individually. The note was payable to bearer and due 60 days from date of issuance.
This note was not paid at maturity and D’Amico wrote to GBC and Canizaro a number of times between the maturity date and the end of 1966. He also testified that he had made numerous contacts with Cani-zaro, both over the telephone and in person, without any success in receiving payment on the obligation.
On January 10, 1967, the “Assignment Separate from Certificate” forms were admittedly completed as to name of attorney and date. The insertion of the assignee’s name and the witness’ signature on the same day is a matter of contention.
After more attempts to collect the note failed and D’Amico determined that a suit to enforce his claim was necessary, he contacted Canizaro and obtained “a continuing guarantee and endorsement” of the note, which agreement was dated March 29, 1967, and given in consideration for D’Amico not filing suit against Canizaro on the note at that time. In April, 1967, D’Amico filed suit on the note against GBC, Recile and Spalitta and obtained a judgment against them in May, 1967. In June, 1967, Recile filed for bankruptcy and an unsuccessful attempt was made to reorganize GBC. Being unable to satisfy his judgment, D’Amico filed this suit on April 23, 1968, against Canizaro as endorser and guarantor.
On May 31, 1968, D’Amico filed a notice of lis pendens against three parcels of property owned by defendant (including his residence), it being set forth that the suit of April 23, 1968, was to obtain a money judgment “and to establish plaintiff’s ownership and/or interest in and to certain *549 lands owned by defendant in Orleans Parish * * On June 13, 1968, defendant filed a mandamus action in order to secure the cancellation of the notice of lis pen-dens. On the' next day the notice was can-celled at the request of the plaintiff. On June 25, 1968, defendant filed a reconven-tional demand in the instant suit seeking an award for the damages allegedly sustained by him as the result of the filing of the notice of lis pendens. This was dismissed by the trial judge.
Two issues have been raised on appeal: (1) Did D’Amico become owner of the pledged stock by the insertion of his name as assignee on the stock assignment forms attached to the stock certificates; and (2), was D’Amico estopped from recovery as creditor-pledgee by his allegations of ownership of the GBC stock in other litigation?
LSA-C.C. Arts. 3154-3175 deal with pawn, the pledge of movable property. Of particular import to the present case are Arts. 3158 and 3165.
Art. 3158 states the formalities and contents of pledge. It reads, in part, as follows:
“But this privilege shall take place against third persons only in case the pledge is proved by some written instrument, in which shall be stated the amount of the debt intended to be secured thereby, and the species and nature of the thing given in pledge; or the description of the thing pledged may be contained in a list or statement annexed to the instrument of pledge and giving its number, weight or descriptive marks.
“When a debtor wishes to pledge promissory notes, bills of exchange, bills of lading, stocks, bonds, policies of life insurance, or written obligations of any kind, he shall deliver to the creditor the notes, bills of exchange, bills of lading, stocks, bonds, policies of life insurance, or other written obligations, so pledged, and such pledge so made, except as hereinafter provided with regard to life insurance policies, shall without further formalities be valid as well against third persons as against the pledger thereof, if made in good faith, provided that where the pledge of instruments not negotiable, the debtor must be notified thereof, it being understood that no notification is required in the case of the pledge of certificates of corporation stock. All pledges may be made by private writing of any kind if only the intention to pledge be shown in writing, but all pledges, except of a life insurance policy in favor of the insurer, must be accompanied by actual delivery. * * * f)
Art. 3165 lists the rights of the pledgee on default of debtor and reads as follows:
“The creditor cannot, in case of failure of payment, dispose of the pledge; but when there have been pledges of stock, bonds or other property, for the payment of any debt or obligation, it shall be necessary before such stocks, bonds or other property so pledged shall be sold for the payment of the debt, for which such pledge was made, that the holder of such pledge be compelled to obtain a judgment in the ordinary course of law, and the same formalities in all respects shall be observed in the sale of property so pledged as in ordinary cases; but in all pledges of movable property, or rights, or credits, stocks, bonds or other movable property, it shall be lawful for the pledger to authorize the sale or other disposition of the property pledged, in such manner as may be agreed upon by the parties without the intervention of courts of justice; provided, that all existing pledges shall remain in force and be subject to the provisions of this act. (As amended by Acts 1872, No. 9)”
As stated before, the time of completion of the stock assignment forms was a point of contention between the parties. Cani-zaro contends that when D’Amico inserted his name as assignee of the stock, he ef *550 fected a transfer of ownership. Assuming arguendo that the time of completion as to assignee’s name was January 10, 1967, the effect would be the same as if D’Amico had been named as assignee of title to the stock from the beginning. His rights would still be governed by the law of pledge and his recourse, as pledgee, before or after maturity would be so governed.
As. stated in LSA-C.C. Art. 3158 the pledge of stock must be evidenced by a written instrument and accompanied by delivery of the stock pledged, as evidenced by the stock certificates. In the present case the pledge agreement was contained on the reverse side of the note. The assignment forms attached to and delivered with the stock certificates were incidental to the pledge agreement and did not evidence a change of ownership of the stock.
The courts of Louisiana have consistently held that an irrevocable power of attorney, attached to or accompanying stock certificates given in pledge, does not give the pledgee any greater rights than if he did not have the power of attorney, even when he is specifically given the power to “sell, assign or transfer” the stock. His rights and obligations are still controlled by the Civil Code articles on pledge. Lallande v. Ingram, 19 La.Ann. 364 (1867) ; Chappuis v. Spencer, 167 La. 527, 119 So. 697 (1928); State ex rel. Canal Bank v. North American Land & Timber Co., 112 La. 441, 36 So. 488 (1904).
Canizaro has not submitted any evidence that D’Amico has attempted to sell or have the stock sold or has sought to have a new stock certificate issued in his name. He has retained the pledged stock and has not altered his status as pledgee. The insertion of his name as assignee did not alter his status as pledgee or effect a transfer of ownership of the pledged stock.
Canizaro contended that the Uniform Stock Transfer Act, LSA-R.S. 12:621 et seq., applied and was a basis for his other contention that D’Amico had transferred the stock to himself. Since we have found that the pledge agreement was not violated and is still binding, there has been no transfer of title and the Uniform Stock Transfer Act does not apply.
We have previously determined that the stock ownership has not been transferred to D’Amico, hence there has been no sale and there can be no deficiency. Nor is D’Amico seeking a deficiency judgment under LSA-R.S. 13:4106 and 4108. His present suit is for the total amount of the endorsed note and there has been no impairment of Canizaro’s subrogation rights on the pledged stock, as D’Amico has retained the stock as pledgee and can deliver it to Canizaro upon payment. He has not voluntarily accepted the stock as payment of the debt thereby discharging the surety.
Another issue raised by Canizaro in his defense is that, assuming arguendo that D’Amico did not become the owner but was at all times pledgee of the stock, he was estopped from asserting this defense since he had judicially admitted his ownership in other actions. The basis for Canizaro’s contention is that in another lawsuit and in bankruptcy proceedings against Recile, D’Amico had intervened and alleged in his petition that he was the owner of the 8.8 shares of stock that was the subject of that suit.
LSA-C.C. Art. 2291 defines judicial confession as:
“The judicial confession is the declaration which the party, or his special attorney in fact, makes in a judicial proceeding.
“It amounts to full proof against him who has made it.
“It can not be divided against him.
“It can not be revoked, unless it be proved to have been made through an error in fact.
“It can not be revoked on a pretense of an error in law.”
*551 In Jackson v. Gulf Insurance Company, 250 La. 819, 199 So.2d 886 (1967), the Supreme Court distinguished a judicial confession from testimony and held that testimony is not a judicial confession. Judicial confession was defined as “a party’s admission, or concession, in a judicial proceeding of an adverse factual element, waiving evidence as to the subject of the admission. A party’s testimony is offered as evidence, not as a waiver of it.” This definition still leaves us with the question of whether an allegation in another action is a judicial confession and estops the pleader from subsequently alleging differently.
In Coleman v. Jones & Pickett, 131 La. 803, 60 So. 243 (1912), the Supreme Court ruled on the question of whether the allegation of the plaintiffs in a previous lawsuit was binding upon them in the case before the court. It held:
“The allegation of plaintiffs was not only an independent one, but it really had no place in the petition in the peti-tory action. It did not damage defendants in any way, or cause them to adopt any line of action whatever, or give to them any substantive right. It did not affect the litigation to any extent, or the parties thereto, beyond the fact that it is a declaration by plaintiffs, which may be explained or contradicted by them.
“The plea of estoppel and objection to the evidence should have been overruled.”
In the landmark case of Farley v. Frost-Johnson Lumber Co., 133 La. 497, 63 So. 122, L.R.A.1915A, 200 (1913), the Supreme Court made an exhaustive review of the cases concerning judicial admission and the effect of an admission as an estoppel in a subsequent action. The court found that the following cases
“ * * * are authority for the proposition that while allegations made in the pleadings of another suit are always receivable in evidence, they are not conclusive, or operate as estoppel, unless the party who invokes them has been prejudiced in some way by them, to wit: Bore v. Quierry, 4 Mart. (O.S.) 545, 6 Am. Dec. 713; Wells v. Compton, 3 Rob. 171; Mallard v. Carpenter, 6 La.Ann. 397; City of New Orleans v. Sheppard, 10 La.Ann. 268; Smith v. Harrell, 16 La.Ann. 190; Morgan, Adm’r v. Kinnard, 23 La.Ann. 645; Ware v. Morris, 23 La.Ann. 665; Chaffe & Bro. v. Morgan, 30 La.Ann. 1307; Watkins v. Cawthorn, 33 La.Ann. 1194; Stockmeyer v. Oertling, 35 La.Ann. 467; Succession of Harris, 39 La.Ann. 443, 2 So. 39, 4 Am.St.Rep. 269; Imhof v. Imhof, 45 La.Ann. 706, 13 So. 90; Lachman & Jacobi v. Block & Bro., 47 La.Ann. 505, 17 So. 153, 28 L.R.A. 255; Godwin v. Neustadtl, 47 La.Ann. 841, 17 So. 471; Vredenburg v. Baton Rouge Sugar Co., 52 La.Ann. 1666, 28 So. 122; Brown, Chipley & Co. v. Haigh, 113 La. 563, 37 So. 478; Doullut v. Smith, 117 La. 491, 41 So. 913; Davis v. Welch, 128 La. 785, 55 So. 372; Coleman v. Jones & Pickett, 131 La. 803, 60 So. 243, not yet officially reported.”
The court also commented on LSA-C.C. Art. 2291 as follows:
“This article, by the way, has reference only to the judicial confession made in the suit itself, either in the pleadings, or in the note of evidence, for the purpose of dispensing from taking evidence upon the fact admitted; it has no reference to confessions, or admissions, made in other suits. The latter can be classed only as extrajudicial confessions, or admissions which are evidence but not conclusive presumptions, or estoppels.”
It concluded that the allegations of a prior suit did not give rise to any estoppel if the allegations have not been acted upon or prejudicial to the party claiming the es-toppel.
In Prieto Lumber Company v. Shoultz, 111 So.2d 857 (La.App.1st Cir. 1959), the *552 court again ruled on the estoppel effects of allegations made in a prior suit which did not involve the party seeking the estoppel. The court said:
“Thus, said allegations were merely allegations indicating defendants’ awareness of their potential liability to plaintiff under the outstanding lien.
* * * * * *
“In interpreting the provisions of the foregoing codal article, it was held in the landmark case of Farley v. Frost-Johnson Lumber Co., 133 La. 497, 63 So. 122, L.R.A.1915A, 200, that the judicial confession therein referred to relates only to a judicial confession made in the suit itself, either in the pleadings or the evidence for the purpose of dispensing with the taking of evidence on the fact admitted and that it has no reference to admissions or confessions made in other suits. It further holds that admissions or confessions made in other suits are classified only as extrajudicial confessions which are admissible in evidence but which are not conclusive presumptions and do not operate an estop-pel against the party making them.”
If D’Amico had filed pleadings in this action alleging his ownership of the stock and not amended his pleadings before the trial, he would have been bound by his pleadings. Penn v. Burk, 244 La. 267, 152 So.2d 16 (1963); Gros v. United States Fidelity & Guaranty Company, 183 So.2d 670 (La.App.1st Cir. 1966). However, we do not have that factual situation in this case.
We find that the allegations made by D’Amico in other actions concerning his ownership of the pledged stock was not a judicial confession in the present action and did not estop him from pursuing his claim against Canizaro as endorser of the note secured by the pledged stock.
There remains for consideration the issue presented by the reconventional demand.
The trial judge did not find sufficient proof of damages to allow recovery on defendant’s reconventional demand. We concur in the trial judge’s finding because we have not found adequate proof of damages to allow recovery. Although defendant may have suffered damages, he has not proven the extent thereof and his demands are denied.
For the foregoing reasons, the judgment of the trial court is affirmed. All costs of this appeal are to be borne by defendant.
Affirmed.