## No. 11,365.

### LACHMAN & JACOBI vs. HENRY BLOCK & BRO. ET AL.

Suretyship, like other contracts, requires assent manifested by the parties, so that each may know the other is bound; hence a paper addressed L. & J., San Francisco, California, worded "I agree to become surety to you for ten thousand dollars for B. & B.," sent to L. & J. by the party who obtained it does not constitute a contract without acceptance in any form, manifested by L. & J. to him who signs the paper entitled to know, and to know seasonably, whether he is to be held, and between him and L. & J. there being no communication of any kind whatever, expressive of their assent. R. C. C. 1797, 1798, 1800, 1801, 1802 *et seq.*; 1 La. 189; 6 La. 218; Story on Contracts, Sec. 853; 1 Brandt on Suretyship, Sec. 158, *et seq.*

Nor can it be doubted that guarantees and letters of credit require, under the commercial law as under our Code, acceptance communicated to the parties signing such letters or guarantees, unless acceptance is plainly implied, as, for instance, when the guarantee pays, and the guarantor receives a consideration

Lachman & Jacobi vs. Block & Bro. et al.

for the guaranty: such acceptance is, as expressed by the Supreme Court of the United States, a reasonable requirement to enable the guarantor to know the nature and extent of his liability, and to exercise vigilance in guarding against loss which might otherwise be unknown to him. Story on Contracts, Sec. 853; 1 Brandt Suretyship, Sec. 158, *et seq.*; 16 La. 543; 7 An. 385; 7 Peters, 125; 12 Peters, 213; 104 U. S. 167.

The words "I agree to become surety for ten thousand dollars" with no designation of the debt, whether past, present or future, will not authorize the construction that the proposed suretyship extends to future as well as past debts; such construction is to supply, forbidden by the Code, that which is neither expressed or implied; in such case resort to the testimony is proper to ascertain the intention. Civil Code, Arts. 3035, 3039; 1 An. 62; 3 An. 257.

When a suretyship is to bind for a limited period plainly stated, the suretyship will not attach to debts contracted on terms of credit extending beyond the period fixed for the surety's liability.

Statutes of another State not noticed by our courts, unless proved, will not be deemed to apply to a paper made here supposed to create the obligation of a surety, which, if it exists, is to be performed here unless the paper itself is clearly within the scope of the statute, and unless the supposed obligation is clearly excluded from the operation of our law; it being settled that courts in all cases of doubt as to the application of statutes of other States follow our law. 5 Martin, 673; 1 N. S. 522; 5 An. 63; 8 An. 124; 5 N. S. 587.

But it is clear the supposed obligation of a surety claimed to arise on a paper executed, and if producing any obligation it is to be performed here by him, is a Louisiana contract, governed by our law, although the paper is designed to be used by a merchant residing here to obtain credit from a California merchant, the law of which State is claimed to differ from that of Louisiana on the subject of suretyship. Story's Conflict of Laws, Secs. 233, 234, 280, 284; 106 U. S. 124.

The recognition of an asserted debt or promise to pay it, is admissible, but not conclusive against the party, and may be shown to have been made in error. 1 Greenleaf on Evidence, Secs. 204, 209, 212; 7 Rob. 338.

Allegations in a petition and an affidavit for an attachment are admissible only in evidence, but not conclusive in favor of one not a party to the suit, hence such allegations are open to explanation and correction by proof of error. 1 Greenleaf, Secs. 204, 206, 209, 212; 1 Rice on Evidence, pp. 446, 447; Mallard vs. Armistead, 6 An. 397.

Least of all, can such allegations or affidavit give rise to any estoppel unless the basis of some advantage obtained to the prejudice of another, or unless another has changed his position or acted on such allegations or affidavit. 1 Greenleaf on Evidence, Secs. 204, 206, 207, 209, 212.

A PPEAL from the Civil District Court for the Parish of Orleans. *Rightor*, J.

---

*Percy Roberts* and *Bernard Titche* Attorneys for Plaintiff and Appellant.

---

*Farrar, Jonas & Kruttschnitt* and *Farrar, Leake & Lemle* for Appellee and for a Rehearing.

As regards the point made of the defendants' right to demand the division of this alleged debt, we do not desire to conceal from the court the fact that there is a conflict among the authorities as to whether a binding of the surety *in solido* is a waiver of the right of division or not. The question is *res nova* in Louisiana, and it ought to be examined and discussed, and then decided one way or the other.

On the subject of the consent of the creditor to the contract of suretyship, the French authorities are usually silent, because they seem to presume that such consent has in all cases been given. Laurent, however, with his usual precision, strikes the centre (Vol. 28, No. 159). He says: " Le caution s'oblige vers. le créancier; il faut donc le consentement des deux parties contractantes. Quant au débiteur il reste étranger au contrat qui intervient le créancier et le caution."

---

The judgment of the District Court was for the defendant. On a hearing after argument the Supreme Court reversed the judgment of the court *a qua*, and rendered judgment in favor of plaintiff.

---

On subsequent and final hearing the opinion of the court was delivered by

MILLER, J. The important issues in this case, after the fullest discussion by counsel, have been re-examined with earnest attention.

The suit is founded on a paper dated 14th June, 1891, signed by defendant, C. Lazard, addressed to plaintiffs, expressing that he agrees to become surety for Block & Bro., jointly and severally with them, for ten thousand dollars, the agreement to bind till the 15th October, 1891. The argument for plaintiffs maintains that the paper obtained from defendant, Lazard, by one of the firm of Block & Bro., by him transmitted to plaintiffs, residing in California, with no intercourse whatever between plaintiffs and defendant, either before or after the execution of the paper, binds him for ten thousand dollars of the indebtedness of Block & Bro. to plaintiffs, existing at the date of the letter, or contracted after, and even on terms of credit extending beyond the limits expressed in the paper. On the other hand, it is contended on behalf of defendant that the paper, importing merely an engagement to become surety, with no designation of

the debt, can not, by construction, be deemed to cover past and future indebtedness, nor debts contracted on terms of credit beyond the period of defendant's suretyship stated in the paper; and along with these views of the meaning of the letter restricting the liability if any, the proposition of the defence is, that this paper, a mere proposition to become surety, not accepted in any mode whatever, never became a contract, and hence produced no obligation. There are other defences, but in our view they require no determination.

In ordinary significance suretyship refers to an existing debt, as the Code puts it: suretyship is the accessory contract of one who binds himself for the debt of another. But it is not to be doubted that under the Code the contract may bind for future as well as existing or past indebtedness. The expansiveness of the Code may be deemed to embrace suretyship in the largest sense, including, of course, the guarantees and bills of credit so familiar in commercial usage. Civil Code, Arts. 3035, 3036; 1 Bouvier's Law Dictionary, 645. But it seems natural, if suretyship was intended to cover past and future indebtedness of the debtor, the purpose would be expressed. One proposing to bind himself as surety for indebtedness, future and past, and desiring to be understood, would hardly content himself with the mere expression of agreeing to become surety, with no indication of the debt intended to be secured. On the other hand, the creditor seeking a surety for existing, as well as prospective liability of his debtor, would not deem the purpose accomplished by the scant agreement to become surety, with no debt mentioned, future or past. The contention of plaintiffs is, this court is to read into this paper that which is not expressed, and give it the largest significance of suretyship: that is, a suretyship up to ten thousand dollars for the indebtedness, past and future, of Block & Bro. to plaintiffs. It must be borne in mind, too, that the surety is entitled to a strict construction of his contract. He is protected from any interpretation of his contract not resting on clear expression or plain implication. The Code declares: suretyship is not to be presumed, should be expressed, and is to be restricted within the limits intended. Civil Code, Art. 3039; Bank vs. Hagan, 1 An. 62; Freeland vs. Briscoe, 3 An. 257. It seems to us, to make this paper cover past as well as future indebtedness would be to supply by inference that which is neither expressed or implied. If it stands for

past indebtedness, the most liberal construction, if any, would be required to make it cover future debts.   If accepted as suretyship for the future engagements of Block & Bro., it would hardly be deemed rational to make the same words cover past indebtedness. The limitation of defendant's responsibility to 15th October, to our minds, aids the construction.   Such a stipulation might, it is true, be used with reference to an existing debt.   It is more natural so to qualify suretyship for future engagements, and is not uncommon in such papers.   Men are not disposed to become surety for future debts, without restricting their responsibility as to its duration.   That stipulation serves to mark the character of the paper, and coincides with Lazard's testimony.   Plaintiff desired security for future and past debts.   It is quite clear defendant never intended to give that which plaintiff wanted, and did not, in signing the paper before us.

Indeed, the proof is in the record plaintiffs were not satisfied with the paper.   In their communication to Block & Bro. acknowledging its receipt, they state it is not in correct form, and of no " legal force," that they will send another, but it was never sent.   The plaintiffs' communication forcibly suggests whether they were ever influenced by the paper, of no "legal force," as they expressed it, but on which they are now asserting defendant's liability. If of any obligatory force, it would seem to be beyond their appreciation of it, expressed to their correspondent.   On the character of this paper, we have, too, the undisputed testimony of defendant, that he gave it on Block's application, to enable him to make a purchase of wine from plaintiff, susceptible of speedy sale and quick profit, so that defendant's suretyship would be short.   Hence, defendant's limitation not to be bound beyond 15th October, 1891. True, Block's representation would not affect plaintiffs, if the paper was worded to cover a wider or different liability than that intended. The paper authorized no such interpretation as plaintiff now seeks to place on it.   Nor are plaintiffs in any condition to invoke a construction beyond the fair import of its terms.   It seems to us to hold this paper had any reference to past indebtedness is to disregard its language and close our eyes to the testimony of its purpose.

In the face of the limitation in the paper, the defendant is sought to be held for purchases of Block & Bro. beyond the period announced in plain terms as the duration of his responsibility.   Reach-

ing the conclusion the paper contemplated, the future purchase or purchases, how can we hold defendant for engagements extending beyond 15th October, 1891 ? Can this limitation be deemed to refer to the dates of the purchases ? They were limited to $10,000. There was no occasion to repeat that. It is obvious the express stipulation as to the time the defendant was to be bound, excluded the liability of any engagement of Block & Bro., maturing after 15th October, 1891. To hold otherwise, it seems to us, would be to avoid the fair import of the restriction in this respect, and deprive the defendant of the protection he designed securing.' On this ground alone the case is with defendant. But we have given attention to other phases of the controversy.

Whether this paper is to be viewed as referring to past or future, or both past and future indebtedness of Block & Bro., the question remains, did the mere signing of the paper on Block's request, and and its transmission by him to plaintiffs, produce any obligation on defendant's part. In any point of view, is it not indispensable to the creation of any obligation arising on the paper that plaintiffs should have accepted it, and communicated their assent to defendant? If, as we hold, the contemplation of defendant was a suretyship for future debts, Block & Bro. might contract on the faith of his guarantee, was he not entitled to know that plaintiffs acted on it? Can it be admitted that without the slightest intimation to defendant, that his guarantee was accepted, plaintiffs could, at any future time short of prescription, present the paper and claim that defendant was bound for purchases by Block & Bro., of which defendant had neither knowledge or even opportunity of knowledge? If, without assent or communication of any kind by plaintiffs, they can claim in October that defendant's paper, signed in June, became a contract the moment it was signed, and on that theory hold him liable for goods they chose to sell Block, with the same reason plaintiffs might assert such liability years after, or when their debtors become bankrupt, or in other changed conditions, when no sane man would ask or give the guarantee defendant was content to sign in June, 1891, for an apparently prosperous firm. The plaintiffs' case assumes a most extraordinary contract subsisting and binding defendant, but with no assent on plaintiffs' part made known to defendant, entitled to know if he was to be held on his guarantee; and another phase of the supposed contract is, that while defendant was

thus bound unknown to himself, not the shadow of an obligation rested on plaintiffs to furnish Block any goods whatever. It is difficult to conceive that a contract obligation of defendant came into full force by his proffered guarantee in June, 1891, with not the slightest intimation of assent or acceptance by those to whom it was tendered. Contracts, the Code declares, arise from proposition by one and acceptance by the other of the parties. As the Code again puts it: Consent being an operation of the mind, it can have no effect in producing the contract, unless evinced in some manner that shall cause it to be understood by the other party. In a varied form of expression the Code again declares, the agreement is incomplete until acceptance. Nor can there be any acceptance, unless given within the time it was the manifest intention to allow. The appropriate time for plaintiffs' assent was June, when the paper was signed. It will hardly be claimed it could be given in October, when the first intimation came from plaintiffs to defendant of any claim of contract on his part. Then Block had failed, and acceptance on the then condition was precluded by both reason and law. Civil Code, Arts. 1797, 1798, 1800, 1803, 1804, *et seq.* The plaintiffs' case rests on the basis of contract without consent, or rather of assent by one of the parties never given. It would seem to find its answer in those articles of the Code defining the essentials of contracts.

The paper on which this suit is based was executed here. If it imports any obligation, its performance was to be here. Payment, accordingly, is demanded here. In our view our Code is the law to be applied. The Code, too, is in harmony with the general law on the subject. The result would not be at all different if recourse is had to the rules of the commercial law applied in solving questions arising on letters of credit, or the contract of guaranty, as it is termed. It is to be observed that the application of these rules is not excluded, unless contrary to our codal or statutory provisions on the subject. Wagner vs. Kenner, 2 Robinson, 124; Thompson vs. Mylne, 4 An. 210. We think it clear that under the commercial law the guaranty or letter of credit does not bind without acceptance, express or implied. Indeed, this is, in our view, plainly announced in the Louisiana decisions, and to hold otherwise in this case would be a departure from jurisprudence. We state the earlier case in our reports thus: merchants here gave a letter of credit never accepted by the party from whom the proposed advances were to be obtained,

the advances were made, and suit was brought against the merchants on their letter. The decision was the merchants were not bound, because, as the court puts it, the party giving the guaranty has a right to know whether or not it is accepted. The same question came again under discussion in a later case, and although the conclusion was reached that acceptance of the guaranty in that case was to be implied from the subsequent relations of the parties, there is no trace of any contention that acceptance, in some form, was not essential. Bank vs. Sloo, 16 La. 542; Menard vs. Scudder, 7 An. 385. Here, there is absolutely nothing on which acceptance can be implied. The challenge, as we appreciate the argument for plaintiff, is to the Code and our decisions, and affirms that no acceptance is requisite. Nor can the least benefit to defendant come from the case they cite from the United States Reports, dealing with this subject, in which it was held that acceptance was perfected by a consideration, however small, in that case one dollar, paid by the guarantee to the guarantor. Davis vs. Wells, 104 U. S. 160. That payment by the one and the receipt of the money by the other, completed the contract. It was a case of proposition and acceptance. In that case the court refers to acceptance as essential, and to the line of decisions affirming it. Ordinarily, suretyship is completed by the assent of both parties manifested at the time of the contract. True, it may be given after under the restrictions as to time and conditions so clearly stated in the Code. Here, there is none at any time.

There is no more emphatic statement of the necessity of acceptance than is stated in one of the leading text-books, thus: Guaranty, like all other contracts, requires proposal and acceptance thereof. If, therefore, an offer of guaranty be made to any person, it is his duty to give notice of his acceptance, or there will be no contract. Story on Contracts, Secs. 852, 853 *et seq.*; or in the language of the Supreme Court of the United States: " On a letter of guaranty addressed to a particular person, or to persons generally, for a future credit to be given to a party in whose favor the guarantee is drawn, to charge the guarantor notice is necessary to be given to him that the person giving the credit accepted or acted upon the guaranty, or had given credit upon the faith of it. This is not an open question in this court, after the decisions which have been made in Russell vs. Clark, 7

Cranch, 69; Edmundson vs. Drake, 5 Peters, 624; Douglas vs. Reynolds, 7 Peters, 113; and Lee vs. Dick, 10 Peters, 482."

The court further said:

"It is in itself a reasonable rule, enabling the guarantor to know the nature and extent of his liability, to exercise due vigilance in guarding himself against losses which might otherwise be unknown to him, and to avail himself of the appropriate means in law and equity to compel the other parties to discharge him from future responsibility."

The court, after referring to the various decisions of that court on the subject, and after quoting and affirming 7 Peters, 125, says:

"It is unnecessary, after such clear and decided authority of this court on this point, to fortify it by additional adjudications. We are not aware of any conflict of decision on this point." Adams vs. Jones, 12 Peters, 207.

It is claimed, however, neither our Code or the decisions afford any solution of this controversy. It is to be governed, it is urged on us, by a statute of California. This contention is on the idea that plaintiffs receiving the paper in California, it became subjected to the law there. The statute is, that on letters of credit notice of the advances is not requisite. It is assumed that the paper, a suretyship, as it seems, under our Code, is within the purview of the statute, and that concludes the question. Notice of advances on letters of credit may well be dispensed with. The failure of such notice is not, in any case, a defence, unless causing loss to the guarantor. Louisville Mfg. Co. vs. Welsh, 10 Howard, 461 (475); Davis vs. Wells, 104 U. S. 170. It is contended the California statute goes further; applies to guarantees, letters of credit or suretyship, and dispenses with any consent to the contract on the part of the guarantor. If so, the law supplies consent, the foundation of contracts. We do not undertake to determine the scope of this statute. The law of a contract is used to denote, as well that of the place where the contract is made, as of the place of performance. The operation of the law of the place of performance is: where the contract made in one place is to be executed in another. Story, Conflict of Laws, Secs. 233, 234, 280, 284; Pritchard vs. Norton, 106 U. S. 124. The defendant executed the paper in this State. The performance of his contract, if any, was to be here. Here the payment of his alleged obligation was to be demanded, and in our

33

courts payment is sought to be exacted. We think his asserted contract is governed by our law. There is, it seems to us, no doubt of the character; this paper tested by our law, and it may be added, in questions of the application of laws to contracts, in all cases of doubt our courts follow our law.

In reaching our conclusion the contention as to the asserted estoppel of the defendant, forming so large part the discussion in the briefs and at the bar, has not escaped attention. It is urged that his promise to pay plaintiffs' demand, and his allegation and oath to the debt sued on in this suit of his firm against Block & Bro., conclude the defendant from disputing plaintiffs' demand. The proof is, demand was made on defendant in the early part of October, 1891, for the money claimed on his paper of the preceding June. It may well, we think, be assumed that defendant was not at all informed on the question of his liability. The inquiry as to the effect of his paper occupying the attention of counsel and of the court for months, it is not to be supposed the defendant was competent to determine on the demand made on him through plaintiffs' lawyer. But the demand assumed his liability, and defendant's promise was expressed in his request for time to pay. But he consulted his counsel, was advised there was no liability, and on a second demand being made, defendant replied, through his counsel, he was not bound and would not pay. It seems to us utterly beyond the compass of reasonable discussion to hold the defendant bound, merely and only because of his recognition or promise to pay an asserted debt, promptly withdrawn, on being apprised he was not bound. The law does not bind a man irrevocably by his promise made in error, and admits of any explanation that will avoid the promise. A very familiar illustration, if any was needed that such promises do not bind, is furnished in the instance of the endorser, who, ignorant of his discharge, promises to pay. The law permits explanation of his error, holds the promise for naught, and if he has paid on such promise, gives the action to recover back his money. Story on Notes, Sec. 361; Citizens Bank vs. Dugue, 5 An. 12; Oakey vs. Bank, 17 La. 386; Heath vs. Bank, 7 Rob. 334. We can not, therefore, hold this defendant liable on the ground only, that on the lawyer's demand he made a promise, withdrawn soon after, and on which it is not pretended plaintiffs extended any forbearance, or adopted or omitted any action whatever. In the suit of Lazard & Co. against

Block & Bro. for a large indebtedness, it is claimed the amount of defendant's paper or guaranty was included, and in that suit the plaintiff made oath to obtain the attachment.   The amount, forty-one thousand dollars sued for in that suit, included an item of ten thousand dollars as "outstanding."   It appears there was no explanation or discussion between Lazard and the counsel who brought the suit as to this item.   If there had been, it is to be presumed the suit of C. Lazard & Co. for their debt would not have embraced ten thousand dollars, which, if due at all, would be due to C. Lazard individually.   Least of all, is it likely that the counsel, if there had been any explanation on the subject, would have permitted defendant to swear to a debt including ten thousand dollars, which under no circumstances could become a debt until defendant paid the ten thousand dollars to plaintiffs, and which, by that payment, would become the debt of Block & Bro. to defendant, and not to his firm, the plaintiffs in the attachment suit.   Along with the fact that the suit as to this item, "outstanding, ten thousand dollars," was preceded or accompanied with no special direction or information from defendant, we have the statement that the book-keeper of Lazard & Co. furnished the memorandum making up the forty-one thousand dollars.   There is some discussion as to the memorandum, whether or not, it was the guide of counsel in framing his petition.   We will accept the conclusion most favorable to plaintiffs, that it was furnished to the counsel, and we will assume it was intended to include the amount of ten thousand dollars.   Still, it is quite evident the suit was brought hastily, often the case in attachments, evincing, as in this case, we infer, a race of creditors seeking to secure favored position.   It is perfectly clear there was no special communication by defendant to his counsel, with reference to this ten thousand dollar item, and not the slightest knowledge on counsel's part that this paper or guaranty of defendant formed any part of the attachment suit.   We infer from the record, it was not until the demand came from plaintiffs, based on that paper, it became known to counsel the attachment suit embraced the guaranty.   He then told defendant the explanation of the ten thousand dollar item, should have been given before the attachment suit was instituted, clearly implying that if given the item would not have included the guaranty.   The suit as to the ten thousand dollars was thereupon discontinued on the ground of error.

It is this suit, the allegations on which it was based, and defendant's affidavit to the amount sued for, that it is urged on us, excludes defendant from denying his liabilities in the present suit. Let it be conceded when that suit was brought defendant conceived he was bound on the guaranty. If he was not in fact bound, are we to hold him on the ground that whether or not liable he became bound, because in the attachment suit of his firm against Block & Bro. the guaranty was included? Undoubtedly, the allegations of a party, in a suit, are evidence against him in favor of another not a party to the suit. But are they to be deemed conclusive? Even as admissions, their value is diminished by the fact the petition in the attachment suit was directed and framed with no examination or appreciation on the part of counsel or defendant, of the question of liability on the letter of guaranty. Is an impression of liability, when none exists, made the basis of an attachment suit against Block, to preclude the defendant from any defence against plaintiffs when his impression turns out to be erroneous, especially when the suit against Block was discontinued? If so, the error of the party in directing a suit, or the mistake or lack of attention of counsel in framing the petition, is attended with consequences more serious than are readily appreciated. We can not accept the theory that because in the suit of defendant's firm against Block & Bro., the guaranty which had no place in that suit was included, although the suit was discontinued in that respect, yet we are to make the defendant liable, however clear it may appear to us he was never bound. That would be to bind defendant by his erroneous assumption of liability, or by an error of counsel, and not because of any obligation originally resting on him. But it is urged on us defendant derived an advantage from the inclusions of the guaranty in his attachment suit, and hence can not, holding on the advantage, repudiate the allegations in the suit which secured the supposed benefit. We can not perceive the basis of fact for this argument. The firm's debt, of course, excluding the guaranty, was thirty-one thousand dollars. The entire property attached did not exceed nine thousand dollars. Finally on this branch of the case, it is pressed on us, the allegations in the attachment suit are judicial confessions within the purview of Art. 2291 of the Civil Code. This, in our view, misconceives the judicial confession the subject of that article. It can be invoked as conclusive by the party to the suit in which the

allegation is made, and even as to him may be revoked for error of fact. As to those not parties to that suit, the allegations are evidence in their favor, but open to explanation and correction by proof. 1 Greenleaf on Evidence, Secs. 206, 212; Mallard vs. Carpenter, 6 An. 397. Of course when any admission or declaration of a party has been acted on by another, can be withdrawn to his prejudice. Then the admission becomes an estoppel. 1 Greenleaf, Sec. 207. There is not the faintest pretence that the plaintiffs in this case, save in one respect, the beginning of this suit, were influenced in the slighest degree by the intercourse between their lawyer and defendant, from which his promise is deduced, nor by the attachment suit of defendant's firm or the allegations of the petition in that suit. The plaintiffs were apprised defendant did not recognize their demand, and on that they acted, i. e., brought this suit. But no act or declaration of defendant is exhibited by this record on which, in our view, any estopel can be based.

In onr view the case is with the defendant on the terms of the paper the basis of this suit. That paper excludes liability for the engagements of Block & Bro. maturing after the 15th October, 1891. We have also considered the question whether any contract was ever formed, and on that issue our conclusion is adverse to plaintiff. The grounds of liability urged by plaintiff have had our careful attention. More might have been said with respect to the issues we deem controlling, as well as other phases of the controversy, but the views presented in this opinion dispose of the case.

It is therefore ordered, adjudged and decreed that our former judgment in this case be set aside, and it is now ordered, adjudged and decreed that the judgment of the lower court be affirmed, with costs.

### DISSENTING OPINION.

WATKINS, J. Various grounds have been assigned—which are pressed in argument, oral and printed—why we should grant a rehearing and change our decree; but, as we are all of the opinion that all of them are groundless, with the exception of one, I will confine my argument to that one exclusively.

This suit is brought against Henry Block & Bro. on their indebtedness to plaintiffs on open account, aggregating something more than ten thousand dollars; and against C. Lazard, on his written agree-

ment to bind himself to them for ten thousand dollars, in favor of Henry Block & Bro.

This agreement is of the following tenor, viz.:

"I hereby agree to become surety for Henry Block & Bro. for the sum of ten thousand dollars, jointly and severally with Henry Block & Bro. This agreement to bind me in the sum of ten thousand dollars, until the 15th of October, 1891."

The two principal grounds of defence which are set up in the answer, and relied upon in argument, are:

(1) Want of notice by Lachman & Jacobi to Lazard of their acceptance of his agreement; and (2) fraud, on their part, in obtaining it.

*Imprimis*, these defences involve a manifest contradiction, that is utterly destructive of the defence, in this: If plaintiffs never accepted the defendant's agreement, they could not have been, at the same time, guilty of fraud in obtaining it; and if they were guilty of fraud in procuring it, certainly notice of their acceptance would have been an unavailing ceremony.

These judicial admissions ought to be the end of the case.

The only doubt there is in the minds of the members of this court, as to the correctness of our original opinion, is in relation to the plaintiffs' *notice* to Lazard of their acceptance of his agreement.

The difficulty of *solution* arises chiefly from the difficulty there is in determining what the instrument of writing is—one of suretyship, guaranty, or a letter of credit.

In my opinion the agreement of Lazard is one of suretyship for the following reasons, viz.:

1. Because the recitals of the instrument declare that " I hereby agree to become *surety* for Henry Block & Bro."

2. In the brief of counsel in support of this application I find the following admission, viz.:

" The contract on its face is a contract of *suretyship*, and the court holds it to be such."

Again:

" The court erred in holding that Lazard was not entitled to notice from the plaintiffs of their acceptance of his alleged contract of *suretyship*."

Again:

"The court erred in holding that the letter missive in this cause

to plaintiffs was not an offer to become a *surety* within the meaning of the law upon that subject."

That these admissions were deliberately made is attested by the fact that the last two quotations are the headings of the two propositions on which counsel mainly rely, and one of which I have under present consideration.

3. They are in strict keeping with the individual answer of Lazard in this suit, wherein he avers that, if he is in any way liable for the account sued on, Mayer Israel is a *co-surety*, and that he is entitled to the benefit of division, which he hereby claims;" or, *in the alternative*, "the said Mayer Israel being a *co-surety*, he is entitled to recover against him judgment for *one-half of the amount* of the judgment rendered against him." His prayer for judgment conforms to the foregoing allegations of his answer.

4. In the demand that the attorneys of Lachman & Jacobi made upon C. Lazard, under date October 7, 1891, they say *inter alios* that "we hereby notify you that the indebtedness of Messrs. Henry Block & Bro. to said Lachman & Jacobi, *for which you are surety, under your letter of June 4, 1891,* amounts to ten thousand and seventy dollars and thirty-four cents. You are aware that attachments, far exceeding Henry Block & Bro.'s assets, have been levied upon them, and we demand immediate payment or we shall institute suit promptly.

"Yours very truly,

"MOISE & TITCHE."

There can be no doubt of the correctness of our opinion in so far as it affirmed that Lazard sustained toward the plaintiffs the relation of *surety* for Henry Block & Bro. Under the Code "suretyship is an *accessory promise* by which *a person binds himself for another* already bound." R. C. C. 3035. It is a *personal* and *accessory promise* in favor of a third *person*.

A mortgage is a *contract of security for debt.* R. C. C. 3278. So is a pledge a *contract of security for debt.* R. C. C. 3133. A mortgage is "*a species of pledge.*" R. C. C. 3279.

All of these engagements are, in another article of the Code, under the title "of conventional obligations," placed in the same category, thus:

"An *accessory* contract is made for assuring the performance of a

prior contract, either by the same parties or by others; such as suretyship, mortgage and pledge." R. C. C. 1771.

As an agreement of suretyship, or accessory promise, notification of acceptance on the part of Lachman & Jacobi was altogether unnecessary to give it binding force on C. Lazard (1) because the law does not require such notice; and (2) because the terms of the agreement exclude the idea of notice of acceptance being required.

(a) There is nothing said, under the title "of suretyship," in the Code, of such notice being required, not even by implication.

This is just what we said in our original opinion; and, after making a quotation therefrom, counsel for applicant say in their brief:

"True there is no text of the law to that effect, particularly and specially applicable to the contract of suretyship; but there are many texts to that effect which necessarily apply to all contracts, suretyship included."

Counsel, in support of that proposition, cite quite a number of articles of the Code—1768, 1779, 1797, 1798, 1800, 1803, 1804, 1809, 1810, 1819, 1997— all of them being found under the title of conventional obligations; and *neither of them making mention of the notice of the acceptance of a contract of suretyship.*

This admission is an absolute surrender of the whole question; for it is elementary that the articles of the Code which are collated under any given title must be consulted in determining the *essential* elements of the contract which is therein specified. We may examine other articles and titles for the purpose of ascertaining the *effect* of an article under examination, but for such purpose only.

But, strange to say, counsel add—in the very next sentence to the one above quoted—that "suretyship is a *commutative contract,*" referring to R. C. C. 1768 under the title "of conventional obligations." And, in making that statement, seem to have overlooked thes almost immediately following Art. 1771, which declares that *suretyship* is an "accessory contract," "such as mortgage or pledge."

It must be borne in mind that the question is not as to Lachman & Jacobi's *consent to a contract,* but as to their failure to *give the surety notice of their acceptance of their agreement.* This agreement is an *accessory promise* which C. Lazard executed in favor of Lachman & Jacobi *ex gratia.* The primary obligation is from Henry Block & Bro. to Lachman & Jacobi. It is therefore clear that the rules of

law governing commutative contracts are without application or analogy to the issue.

(b) The terms of Lazard's agreement exclude the idea of Lachman & Jacobi giving notice of acceptance; because they are absolute and unconditional, and clearly import a binding agreement from and after date, for it says:

"I hereby agree to become surety for Henry Block & Bro. for the sum of ten thousand dollars jointly and severally with Henry Block & Bro. This agreement to bind me in the sum of ten thousand dollars until the 15th of October, 1891."

Not only does C. Lazard "agree to become surety for Henry Block & Bro.," but this agreement is made "*jointly and severally with Henry Block & Bro.*"

Nor is this all, for the foregoing is supplemented thus: "This agreement to *bind me* in the sum of ten thousand dollars until the 15th of October, 1891." To bind him, when? Evidently from the date of the agreement. To bind him how? Jointly and severally with Henry Block & Bro. for their indebtedness to Lachman & Jacobi. What is the *effect* of such a promise of suretyship? Let us see what the Code says under the title which treats "of the *effects* of suretyship between the creditor and the surety," with reference to this character of suretyship; and looking into the Code on the subject we find the following, viz.:

"The obligation of the surety toward the creditor is to pay him in case the debtor should not himself satisfy the debt; and the property of such debtor is to be previously discussed or seized, *unless* the surety should have renounced the plea of discussion, *or should be bound in solido jointly with the debtor, in which case the effects of his engagement are to be regulated by the same principles which have been established for debtors in solido.*" R. C. C. 3045.   (Our italics.)

Let us then examine the principles which have been established for debtors *in solido*, and thus ascertain what are the effects of C. Lazard's solidary engagement with Henry Block & Bro. in favor of Lachman & Jacobi.

A single reference will answer the purpose, for the provisions of R. C. C. 2094, to be found in the chapter which treats "of the rules which govern obligations with respect to debtors *in solido*," are: "The creditor of an obligation contracted *in solido* may apply to any one of the debtors he pleases without the debtor's having a right to plead the benefit of division."

Giving the same effect to Lazard's solidary engagement of surety-ship, he is not entitled to urge the plea of discussion or division; and Lachman & Jacobi could apply to him *first and alone* to pay the debt of Henry Block & Bro., if they chose.

This is evidently true, and demonstrates that C. Lazard was not entitled to notice by Lachman & Jacobi of their acceptance of his *solidary suretyship.*

To arrive at this conclusion, this court would have to maintain the doctrine that the surety *in solido* on any conventional obligation would not be bound without the obligee's formal notice of accept-ance first given.

This is not true, of course.

But it is insisted that Lazard's agreement is merely a *mercantile letter of credit,* and hence notice of acceptance is of its essence.

Let us examine this proposition.

Had Lazard's engagement been *restricted* to the phrase "I hereby agree to become surety for Henry Block & Bro. for the sum of ten thou-sand dollars," and all that follows *omitted,* there might have been plaus-ibility in the contention; but the remaining words of the sentence, "jointly and severally with Henry Block & Bro.," give it the char-acter of a *solidary* engagement with the plaintiffs' debtors, which the Code declares shall be "regulated by the same principles which have been established for debtors *in solido*"   R. C. C., 3045.

And the concluding sentence, "*this agreement to bind me* in the sum of ten thousand dollars, until the 15th of October, 1891," even more clearly evidences the *immediate* and *unconditional* effect of Lazard's engagement.

Words more potent could not have been chosen for the purpose of showing that Lazard's *evident intention* was to bind himself *imme-diately and in any contingency.*

His agreement is altogether different from the one that figured in the case of Menard vs. Scudder, 7 An. 385.

That was of the following tenor, viz:

"BATON ROUGE, December 4, 1849.

"I do recommend my friend, J. B. Scudder, of the parish of East Baton Rouge, a planter, and any funds he may raise, or acceptances, in case he does not pay, I bind myself to pay.

"JAMES McCALOP."

Of that instrument the court express the opinion, viz.: "The common sense of this declaration is a *promise to indemnify; a* guarantee to those who *might* lend him money, or accept for him." (Our italics.)

They also expressed the opinion that notice of its acceptance was necessary; but it is interesting and instructive to observe the grounds they put that opinion upon. They say:

" For when the letter of guaranty is addressed to the public at large; when it is a *proposition,* and to attach upon future transactions; when it is *unlimited in amount and indefinite in duration, and is, by its nature, subject to recall, it seems manifestly just* that the guarantor should be entitled to notice of acceptance within a reasonable time from the person who undertakes to act upon its faith." (Our italics.)

The agreement of Lazard is wholly different in every respect.

But if the agreement of Lazard be taken for a letter of credit, *it is a foreign and not a domestic contract.* It was drawn and signed in New Orleans, La., to have effect in San Francisco, Cal. It was addressed to Lachman & Jacobi, of San Francisco, by C. Lazard, of New Orleans. It was intended to form the basis of a line of credit the former were to give to Henry Block & Bro., as well as to secure their existing indebtedness.

The precept of our Code applicable to this kind of an engagement is this:

" But the effect of acts passed in one country to have effect in another country *is regulated by the laws of the country where such acts are to have effect."* R. C. C. 10. In our jurisprudence this article has been frequently applied to similar engagements.

In Whiston vs. Stodder, 8 M. 135, it was held that " a contract between persons separated from each other is consummated in and governed *by the laws of the place where the final assent is given.* So an order for goods from one in Louisiana on another in England is governed by the English law." Shaw vs. Oakey, 3 R. 361.

In Vidal vs. Thompson, 11 M. 23, it was held that " the laws and usages of the place where the obligation is to be *fulfilled* must regulate its performance."

In Zacharie vs. O'Beirne, 6 La. 402, it was held that " a mortgage given in one State, to secure advances to be made by a mortgagee.

in another State, being but inchoate, to take effect on the *latter's* acceptance, is governed by the laws of *his* domicile."

In Beirne vs. Patton, 17 La. 589, it was held that " the validity of a contract made in one place, tacitly, or expressly to be performed in another, depends upon the *laws of the latter*."

But perhaps the strongest and clearest illustration of this principle of law is to be found in the recent case of Claflin vs. Mayer, 41 An. 1048, in which a case is stated in which "the completion of the contract, the acceptance of the price and conditions, depended entirely upon the non-resident creditors." "When," the court say, "the agent exhibited the samples under their restricted authority, and transmitted their orders to their principal, there was no obligation created which the buyer could enforce. When the proposal to purchase, as forwarded by the agent, was accepted by his principal, *then* there was a contract *created* which the buyer in New Orleans could enforce."

Again:

"In the instant case there is no difference between the *proposal* to purchase forwarded by the agent, and one transmitted through the mail by the buyer. It is not doubted that purchases by order by the buyer himself *become contracts of the place where the order is filled* (our italics). Gates vs. Gaither, 46 An. 286; Succession of Larendon, 39 An. 952. (Italics by the J., dissenting.)

Unquestionably, Lazard's engagement, considered as a letter of credit, is a California contract, the city of San Francisco being the place of acceptance, as well as the place where the orders of Henry Block & Bro. were to be thereunder filled.

But, in this view of the case, Lazard was entitled to *no* notice of acceptance, because the Civil Code of California provides that " the writer of a letter of credit is liable for credit given upon it, *without notice to him*, unless its terms express or imply the necessity of giving notice." Civil Code of California, Art. 2865.

The application of the law of the place of acceptance destroys this contention of the defendant, altogether.

But let me go a step further and consider Lazard's agreement as a common law guaranty; and what is the result?

On this proposition it is only necessary for us to consider one case —Davis vs. Wells, 104 U. S. 159—as it is conceded to be the leading case on that question. Its *syllabus* is as follows, viz.:

"The rule requiring notice by the guarantee of his acceptance of the guaranty, and his intention to act under it, *applies* only when the instrument being, in legal effect, *merely an offer or proposal*, such an acceptance is necessary to the mutual assent without which there can be no contract." (Italics by the J., dissenting.)

Applying that rule to Lazard's agreement, it is quite evident that he was entitled to *no* notice of acceptance, because it is *not a mere proposal* but a *solidary* engagement with Henry Block & Bro.

This was *the* feature of the contract *Davis* entered into with Wells, Fargo & Co., which the Supreme Court particularly emphasized, as controlling their decision; for, in treating of this *absolute* and *unconditional* feature of it, they say:

"But, if we should consider that, notwithstanding the completeness of the contract as such, the guaranty of the future advances was *subject to condition imposed by law, that notice should be given to the guarantor* that the guarantee either would or had acted upon the faith of it, we are to inquire what effect is to be given to the use of the words which declare that the guarantors thereby 'guaranty unto them, the said Wells, Fargo & Co., *unconditionally and at all times, any indebtedness of* Gordon & Co., to the exient and not exceeding the sum of ten thousand dollars, for any overdraft now made or that may be hereafter made at the bank of said Wells, Fargo & Co.'

"Upon the supposition now made, the notice necessary arises upon the nature of such guaranty.

"It is not, and can not be, claimed that such a condition is so *essential to the obligation that it can not be waived.* We do not see what less effect can be ascribed to the words quoted *than that all conditions that would otherwise qualify the obligation are by agreement expunged from it and made void.*

"*The agreement becomes thereby absolute and unqualified; free from all conditions whatever. This is the natural, obvious and ordinary meaning of the terms employed, and we can not doubt that they express the real meaning of the parties.*

"It was their manifest intention to make it unambiguous that Wells, Fargo & Co., for any indebtedness that might arise to them in consequence of any overdrafts of Gordon & Co., might securely look to the guarantors, *without the performance, on their part, of any conditions precedent thereto whatever.*" (Italics by the J., dissenting.)

The court placed their decision squarely upon the *absolute* terms

of the guaranty, viz.: "We guaranty unto them, the said Wells, Fargo & Co., *unconditionally and at all times, any indebtedness of Gordon & Co.;*" and construed that language to be *a waiver of all conditions precedent.* In other words, the court interpreted those terms as having the *same effect as a solidary promise of suretyship under our law;* and operated as a *waiver,* or rather as a renunciation of notice of acceptance on the part of the guarantee.

That decision furnishes a conclusive answer to the contention of defendant's counsel.

The next proposition that is insisted upon is, that in no event can Lazard be bound for the debts Henry Block & Bro. had *already contracted* at the date of his agreement, June 4, 1891.

Why not? The terms of his agreement are general, viz.: "I hereby become surety for Henry Block & Bro. for ten thousand dollars." Also: "This agreement to bind me in the sum of ten thousand dollars until the 15th of October, 1891." They are without any limitation or restriction as to any particular indebtedness of Henry Block & Bro., for which Lazard obligated himself as surety, past, present or future.

As a man binds himself, so will he be bound.

The law of suretyship puts no limitation upon such agreements. Quite the contrary, for the Code declares that "suretyship is an accessory promise, by which a person binds himself for another already bound." Revised Civil Code, 3035.

That article may be interpreted to mean "already bound" for an *existing* indebtedness, or for an indebtedness to be created in the future. The essential thing is that the surety shall bind himself *as the obligor is bound, and not differently.*

But if this is considered to be a doubtful proposition, the matter is put at rest by the parties themselves pending their negotiations on the subject.

On the 25th of May, 1891, plaintiff wrote a letter demanding of Henry Block & Bro. a guaranty in these words, viz.:

"You must also *secure us in some way for money owing us for merchandise,* and a guaranty to the amount of ten thousand dollars from your father-in-law would be acceptable."

This letter closes with this sentence, viz:

"The guaranty written of we want in such shape that it covers

all you owe us (on merchandise) and all you may owe us hereafter, up to ten thousand dollars."

A similar request is made in their letter addressed to Henry Block on the following day. On the 3d of June these two letters were followed by a telegram of similar purport.

Immediately upon the receipt of those letters and telegram the agreement of C. Lazard was procured, and on the 4th of June the following letter was mailed to the plaintiffs, viz.:

"NEW ORLEANS, La., June 4, 1891:

"Messrs. Lachman & Jacobi, San Francisco, Cal.:

"DEAR SIRS—Your telegram of the third to hand and contents noted, and to-day wire you, Lazard's guaranty mailed to-day, which I enclose herewith. If I or our firm owe you this on that date, same will be promptly paid by C. Lazard & Co.

"HENRY BLOCK."

These letters, amongst others, were introduced in evidence by C. Lazard, and they are as binding on him as any other part of the testimony, and from its effect there is no possible escape for him.

Hence we have proved, "out of the mouth of his own witnesses," that the agreement was intended to secure the payment of Henry Block & Bro.'s *merchandise account then due* to the plaintiffs, as well as their future and prospective indebtedness up to the 15th of October, 1891.

But what is an even *more important and conspicuous fact is that Lachman & Jacobi, over their own signatures, negotiated this guaranty, and influenced and procured the ag eement;* and they indicated their willingness to accept C. Lazard as surety for ten thousand dollars. They telegraphed for it on the 3d of June, and it was promptly forwarded on June 4 by mail, and explained by wire. All of this correspondence is put in evidence by C. Lazard.

In our original opinion (see 15 So. Rep. 649) we held that the allegations of the plaintiffs' petition in the suit of C. Lazard & Co. vs. Henry Block & Bro.—having been sworn to by C. Lazard, the senior member of that firm—constituted "judicial admissions of a party to a suit, which can not be altered at will to the detriment of the other party, or with respect to those persons having an adverse interest in them."

The purpose and scope of this expression were to affirm that if it

were at all doubtful that plaintiffs were entitled to recover against Lazard on his agreement, that the judicial admissions in that petition were conclusive against him, notwithstanding Lachman & Jacobi were not parties to that suit, because the amount of the ten thousand dollars surety here sued on *was included in that suit*, and the affidavit for the attachment was made by C. Lazard. To that proposition, counsel in their application make a most determined resistance.

Plaintiffs' proposition is that, in *this* suit against Henry Block & Bro. and C. Lazard on the account and contract of suretyship, the *latter* can not deny, *for the purpose of relieving himself from liability*, the binding force of a contract, the benefit of which he had sought and obtained in the former suit, by procuring for his firm the *first* attachment of *all* the property of Henry Block & Bro., *the common debtors of both parties, and defendants in both suits at the same time*, and the appropriation of the proceeds of the sale of *the whole* of their property to the payment of the debts of his firm *to the exclusion of all other creditors, plaintiffs included.*

Counsel for Lazard, in their brief, do not deny that the amount of this ten thousand dollar suretyship was included in the suit of C. Lazard & Co. vs. Henry Block & Bro., but, on the contrary, affirm that to be a fact, and insist that it was not in any way binding on C. Lazard & Co. For amongst other things they say:

"That suit was brought by the commercial firm of C. Lazard & Co. That firm was absolutely distinct from C. Lazard. C. Lazard's obligations were not those of the firm. C. Lazard's rights were not those of the firm. The firm was no party to this alleged contract of suretyship. Even if Lazard had paid every dollar of his obligation, the firm could not have recovered a cent from Block & Bro. The firm had no right, power, or authority to sue on any individual claim of C. Lazard."

All that may be admitted at once, for it is not contended that *C. Lazard & Co.* were in any manner bound to plaintiffs, through the instrumentality of that suit. But it is urged, and our opinion holds, that *C. Lazard's* affidavit to the petition in that suit, including the suretyship, *is a binding judicial admission of it from which he can not escape*, notwithstanding it was incorporated therein without the knowledge or consent of his firm.

Counsel seem to take comfort from the fact that there was no averment in the petition in the suit of C. Lazard & Co. vs. Henry

Block & Bro. to indicate that the contract of C. Lazard formed a part of it, and they say in their brief, "it was a plain error of law and fact to include any such individual claim of Lazard in the suit of the commercial firm of which he was a member. This plain error of law and fact was set forth in a motion and affidavit on December 1, 1891, and the court permitted the discontinuance of the suit *in reference thereto.* \* \* \* *Until this affidavit was filed there was nothing whatever in the record to show that the claim included the alleged guarantee.*

\*      \*      \*      \*      \*      \*      \*      \*

"*No human being, not possessed of the power of divination, could, from this language*"—the allegations of the plaintiffs' affidavit—"*infer that the averment covered a contingent liability of one of the partners of the firm,* in which the firm had no interest or concern and which they had no right to set up and no right to recover on."

Again:

"There is not a line of evidence in the record to show that plaintiffs had any knowledge as to what the *indefinite language of this petition covered*, or was intended to cover.

"There was nothing in the record itself, when the suit at bar was brought, which gave the faintest inkling of the fact that the firm of C. Lazard & Co. was trying to enforce the individual claim of one of its members."

The foregoing are distinct and unqualified admissions, that the amount of the suretyship was included in that suit; that it was included therein by C. Lazard intentionally; but that it had been, by him, so *carefully secreted from view* that, in his opinion, "no human being, not possessed of the power of divination," could have inferred from the "indefinite language of the petition" that "it covered a contingent liability of one of the partners" of his firm.

After this suit was filed on the 5th of October, 1891, the contract of suretyship went to maturity on the 15th; but on the 7th of October, *previous to its maturity*, the attorneys for the plaintiff wrote to C. Lazard a letter, *demanding immediate payment*, on the penalty of suit *instanter.*

In that letter they say:

"*You are aware that attachments far exceeding Henry Block & Bro.'s assets have been levied upon them*, and we demand immediate payment or we shall institute suit promptly."

34

What reply did C. Lazard make to that demand? He neither disavowed his liability nor plead prematurity, but, *carefully withholding* from plaintiffs' counsel the fact that his liabil ty was incorporated in the previous suit, asked them for an extension of time—thereby *unqualifiedly* admitting his liability to the plaintiffs.

But the plaintiffs did not *then* institute suit; they waited patiently for five weeks, and only filed suit on the 16th of November, 1891—attaching the same property that C. Lazard & Co. had attached previously.

In their petition in *this suit* all of the facts of the suit of C. Lazard & Co. vs. Henry Block & Bro. are circumstantially related, alleging that it was *first* in order and rank of privilege, and that all of the partnership as well as individual property of the defendants had been seized. Setting out fully C. Lazard's contract of suretyship as securing the defendant's account, plaintiffs aver that in that suit "C. Lazard recognized an indebtedness due to petitioners by said Henry Block & Bro., and as covered by said contract of ten thousand dollars, and that C. Lazard admitted his liability therefor as guaranty for said amount by including it in the aforesaid suit, No. 33,910, and swearing to its correctness."

It thus appears that plaintiffs were well aware of the fact that this suretyship was incorporated in the former suit, notwithstanding C. Lazard's attempted concealment of it, and that fact was made one of the grounds for their attachment, and on it they place reliance as establishing C. Lazard's admission of liability.

They also rely upon Lazard's admission of liability and request for an extension of time to pay.

On the 20th of November, 1891, just five days after this suit was filed, plaintiffs in the suit of C. Lazard & Co. vs. Henry Block & Bro. obtained an order of court for the sale, *pendente lite*, of all defendant's stock of merchandise, and in pursuance of that order same was subsequently sold and the proceeds thereof applied to plaintiffs' claim by preference under their ranking attachment to the exclusion of all others.

On the 30th of November, 1891, ten days subsequent to said order of sale, that case went to trial on plaintiffs' motion to confirm a default, and C. Lazard was placed upon the stand and interrogated as a witness, and in the course of his cross-examination he was asked a great many questions in reference to the agreement he

signed as surety for the defendants in favor of Lachman & Jacobi, his attention being invited to the petition in the suit, evidently with the view of inducing him to make an admisssion to the effect that it was included therein.

To all these questions objection on objection was urged by the plaintiffs' counsel, but they were all overruled by the court and the witness compelled to answer, the objections, evidence and reasons of the judge covering fully fifty pages of the transcript No. 11,103 of this court. But finally, the day having been consumed, and no decisive answer from C. Lazard obtained to these *pertinent inquiries*, the court adjourned for the day.

On the following morning plaintiffs' counsel went into court and filed a very guarded motion, merely stating that "through an error of fact (they had) claimed from the defendant forty-one thousand five hundred and ninety-eight dollars and forty-three cents," while "there was due C. Lazard & Co. only the sum of thirty-one thousand five hundred and ninety-eight dollars and forty-three cents; and that they desired to remit the difference of ten thousand dollars on that account.

The order of court followed the terms of the motion. Still entertaining the idea that they had *effectually concealed* this suretyship from view up to that time, counsel say in their brief:

"No human being, not possessed of the power of divination, could from this language infer that the amount covered a contingent liability of one of the partners of the firm."

And yet they complain very bitterly in their brief that our opinion places an imputation of untruth upon the testimony of Mr. Leake "when he states that he would not have permitted this claim to have been included had he been informed at the time; *and that as soon as Judge Lazarus returned, the error of law and fact was corrected by motion and affidavit.*"

In treating of the $10,000 guaranty, the opinion of the court, says:

"We infer from the record that it was *not until the demand came from the plaintiffs*, based on that paper, that it became known to counsel that the attachment suit embraced the guaranty. He then told (counsel?) the explanation of the $10,000, (which) should have been given before the attachment suit was instituted, clearly implying that if given, the item would not have included the guaranty.

"The suit as to the $10,000, was *thereupon discontinued* on the

ground of error. It is this suit, the allegation on which it was based, and defendant's affidavit to the amount sued for, that it is urged on us, excludes defendant from denying his liability in the present suit."

But I have shown from the record that the plaintiff's *demand* was made on the 7th of October, 1891, and that this suit was not filed until the 16th of November, 1891. During the *five weeks* that intervened, no effort was made towards rectifying the alleged error, and counsel for C. Lazard & Co. did not appear in court for that purpose until the 1st of December, 1891.

Under this state of facts I think the judicial averments made in the petition of C. Lazard & Co. vs. Henry Block & Bro. are undoubtedly binding on C. Lazard in this suit.

In our opinion we said:

" And this court recently said in Williams vs. Commission Co., 45 An. 1013: 'There are acts in judicial proceedings which bind the parties to them, even so far as third persons are concerned.' "

This principle has often been affirmed by this court.

In Morgan vs. Kennard, 23 An. 645, the court say: " It is a general rule that parties are bound by their judicial admissions; and it is also true that admissions made in one suit may sometimes be used in another suit, although the suits be not the same."

In Edson vs. Freret, 11 An. 710, the court said: " He is not to be heard who alleges things contradictory of each other."

In Gridley vs. Conner, 4 An. 416, the court said: " We understand it to be a rule in the administration of justice that a man shall not be permitted to deny what he has solemnly acknowledged in a judicial proceeding; nor to shift his position at will to a contradictory one in relation to the subject matter of litigation, in order to prostrate and defeat the action of the law upon it "

These principles have been announced in frequent decisions of this court, and in various forms of expression, and notably in the following, viz.: Farrar vs. Stacy, 2 An. 210; Webster vs. Smith, 6 An. 719; Osborn vs. Segras, 29 An. 291; Fowler & Stillman vs. Stephens, 29 An. 353; Factors and Traders Insurance Co. vs. De Blanc, 31 An. 100; Byrne vs. Bank, 31 An. 81; Folger vs. Palmer, 35 An. 743.

On the foregoing established facts and this summary of adjudicated cases, I am of opinion that this question is set at rest.

And now the question presented for the serious consideration of this court is, can we, in the face of the law and the evidence, over-rule our former opinion and pronounce a judgment in favor of Lazard, declaring him free from all liability on his written promise of suretyship ?

This question has been answered in the affirmative by the majority of the court; but I feel constrained to dissent from the conclusions they have reached.